SZUBSKI et al.

v.

MERCEDES–BENZ, U.S.A., L.L.C.

2003-Ohio-4640.]

Court of Common Pleas of Ohio,
Cuyahoga County.

No. CV–02–483588.

Decided April 8, 2003.

Krohn & Moss, Ltd., David Levin and Ronna Lucas, for plaintiffs.

Goodman Weiss Miller LLP and James S. Wertheim, for defendant.

BURT W. GRIFFIN, Judge.

{¶ 1} This is an action for consumer relief arising from the lease of an automobile. Plaintiffs Ralph Szubski and Computer Jungle, Inc. seek damages under the Magnuson–Moss Warranty Act, Section 2301 et seq., Title 15, U.S.Code (Counts I and II), and the Ohio Lemon Law, R.C. 1345.71 et seq. (Count III).

{¶ 2} This matter is before the court on the motion of defendant Mercedes–Benz, U.S.A., L.L.C. to dismiss Counts I and II of the first amended complaint for failure to state a claim upon which relief can be granted, and plaintiffs Ralph Szubski and Computer Jungle, Inc.'s brief in opposition thereto.

## I. Allegations in the First Amended Complaint

{¶ 3} Defendant Mercedes–Benz, U.S.A., L.L.C. ("MBUSA" or "manufacturer") is in the business of manufacturing, selling, and distributing motor vehicles and related equipment and services. (First Amended Complaint at ¶ 3.) MBUSA is also in the business of marketing, supplying, and selling written warranties. Id.

{¶ 4} Plaintiffs Ralph Szubski and Computer Jungle, Inc. (collectively, "plaintiffs") allege the following background facts in their first amended complaint:

"4. On or about November 29, 1999, Plaintiffs leased from Firstar Bank ('Lessor') a 2000 Mercedes Benz E320S ('E320S'), manufactured and/or distributed by Manufacturer * * * to be used for the personal use of Plaintiff, RALPH SZUBSKI.

"* * *

"6. Prior to, or contemporaneous to, Plaintiffs' lease of the E320S, [Motorcars East, Inc.] sold the E320S to Lessor for valuable consideration.

"7. Lessor purchased the E320S for purposes other than resale.

"8. Lessor purchased the E320S to lease to Plaintiffs. In consideration for the lease of the E320S, Manufacturer issued and supplied to Plaintiffs several written warranties, including a four (4) year or fifty thousand (50,000) mile 'bumper-to-bumper' coverage, as well as other warranties fully outlined in the Manufacturer's New Vehicle Limited Warranty booklet.

"9. At the time Lessor purchased the E320S from [Motorcars East, Inc.], the E320S had been driven approximately 17 miles and was covered by Manufacturer's written warranty described above.

"10. Lessor would not have purchased the E320S without Manufacturer's written warranty described above. Additionally, Plaintiffs would not have agreed to lease the E320S without knowledge that Plaintiffs would be able to enforce Manufacturer's written warranty.

"11.   On or about November 29, 1999, and at approximately 17 miles on the E320S, Lessor assigned its rights in Manufacturer's written warranty to Plaintiffs.   The transfer of Manufacturer's written warranty occurred during the duration of said warranty.

"12.   On or about November 29, 1999, Plaintiffs took possession of the E320S and shortly thereafter experienced the various defects listed below which substantially impair the use, value and/or safety of the E320S.

"13.   The nonconformities described below violate the express written warranties issued to Plaintiffs by Manufacturer, as well as the implied warranty of merchantability.

"14.   As a result of these non-conformities, Plaintiffs have delivered the E320S to Manufacturer and/or Manufacturer's authorized servicing dealerships on numerous occasions.

"15.   Manufacturer, through its authorized dealer network, performed repairs on the E320S that were covered by Manufacturer's written warranty.

"16.   Manufacturer allowed Plaintiffs to enforce its written warranty.

"17.   Plaintiffs [have] brought the E320S to [Motorcars East, Inc.] and/or an authorized service dealer of Manufacturer for attempted repairs to various defects and nonconformities * * *.

"18.   Plaintiffs have provided Manufacturer, through its authorized dealership network, sufficient opportunity to repair the E320S.

"19.   After a reasonable number of attempts to cure the non-conformities in Plaintiffs' E320S, the Manufacturer and its authorized servicing dealerships have been unable and/or have failed to repair the nonconformities, as provided in the Manufacturer's warranties."

{¶ 5} Plaintiffs further claim that as a result of the alleged defects in the vehicle, they revoked acceptance of the vehicle in writing on September 5, 2002, but MBUSA refused to accept the revocation.   (First Amended Complaint at ¶ 22–24.)

{¶ 6} In Count I of the first amended complaint, plaintiffs allege a claim for breach of written warranty pursuant to the Magnuson–Moss Warranty Act, Section 2301 et seq., Title 15, U.S.Code. In support of this claim, plaintiffs allege the following:  that they are a lessee of a consumer product;  that they received the vehicle during the duration of the written warranty period applicable to the vehicle;  that MBUSA is a "person" engaged in the business of making a consumer product directly available to plaintiffs;  that the Magnuson Moss Warranty Act applies because the vehicle was manufactured and leased after July 4, 1975, and cost in excess of $10;  that the lease was accompanied by written factory warranties covering any nonconformities or defects in material or work-

manship; and that plaintiffs have suffered damages as a direct and proximate result of MBUSA's failure to comply with its written warranty. (First Amended Complaint at ¶ 27–36.)

{¶ 7} In Count II, plaintiffs allege a claim for breach of implied warranty of merchantability pursuant to the Magnuson–Moss Warranty Act. In support of this claim, plaintiffs allege the following: that the leased vehicle was subject to an implied warranty of merchantability as defined in Section 2301(7), running from MBUSA to plaintiffs; that MBUSA is a supplier of consumer goods as a "person" engaged in the business of making a consumer product directly available to plaintiffs; that the vehicle was impliedly warranted to be substantially free of defects and nonconformities in both material and workmanship, and thereby fit for the ordinary purpose for which it was intended; that the alleged defects render the vehicle unmerchantable, unreliable, and/or unsafe and not fit for the ordinary purpose for which the vehicle was intended; and that as a result of the breaches of implied warranty, plaintiffs are without the reasonable value of the vehicle and have suffered damages. (First Amended Complaint at ¶ 38–45.)

{¶ 8} Plaintiffs' claim under Ohio's Lemon Law, R.C. 1345.72 et seq., which is set forth in Count III of the first amended complaint, is not at issue in this motion to dismiss.

## II. Issues

{¶ 9} The main issue before the Court is whether the Magnuson–Moss Warranty Act, Section 2301 et seq., is applicable to breach-of-warranty actions involving leases. MBUSA argues that the unambiguous language of the statute excludes lease transactions. MBUSA urges the court to follow the holdings of other state and federal courts that have allegedly determined that Congress knowingly opted not to include leases within the scope of the statute. In addition, MBUSA argues that the legislative history of the statute supports a finding that lease transactions are excluded.

## III. Opinion

{¶ 10} Review of a motion to dismiss is restricted solely to the allegations in the pleadings. *Flanagan v. Williams* (1993), 87 Ohio App.3d 768, 771–772, 623 N.E.2d 185. In construing the allegations in the complaint for the purposes of the motion to dismiss, a court is required to accept them as true. *Royce v. Smith* (1981), 68 Ohio St.2d 106, 108, 22 O.O.3d 332, 429 N.E.2d 134. If after construing the allegations in the complaint in favor of plaintiff the complaint fails to show any possible factual basis for a cause of action then the complaint must be dismissed. Id.

{¶ 11} The Magnuson–Moss Warranty Act, Section 2301 et seq., Title 15, U.S.Code (the "Act"), was enacted by Congress in response to misuse by merchants of express warranties and disclaimers. See 59 A.L.R. Fed. 461 (1982), at § 2[a]. The Act mandates certain guidelines in connection with written warranties. Where written warranties are given, they invalidate attempts to disclaim implied warranties. Id.; Section 2308. The law is aimed at written warranties and service contracts made in connection with the sale of "consumer products" (tangible personal property normally used for personal, family, or household purposes). Id.; Section 2301(1). Under the statute, no seller is required to give an express written warranty, but if one is offered, it must comply with the standards set forth in the law. Id.

{¶ 12} Under the Act, a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under the Act, or under a written warranty, implied warranty, or service contract, may bring a suit for damages and other legal and equitable relief, and, if successful, may recover attorneys fees. Section 2310(d).

{¶ 13} In this case, in order to state a viable cause of action, plaintiffs must establish that the automobile in question is a "consumer product." A "consumer product" is defined in Section 2301(1) as:

"[A]ny tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes (including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed)."

{¶ 14} The regulations promulgated under the Act further amplify this definition:

"This means that a product is a 'consumer product' if the use of that product is not uncommon. The percentage of sales or the use to which a product is put by any individual buyer is not determinative. For example, products such as automobiles and typewriters which are used for both personal and commercial purposes come within the definition of consumer product. Where it is unclear whether a particular product is covered under the definition of consumer product, any ambiguity will be resolved in favor of coverage." *Business Modeling Techniques, Inc. v. Gen. Motors Corp.* (1984), 123 Misc.2d 605, 607, 474 N.Y.S.2d 258, 260, quoting Section 700.1(a), Title 16, C.F.R. (1983).

{¶ 15} It is generally recognized that an automobile is a "consumer product" under the Act. See *Business Modeling Techniques, Inc.,* supra, 123 Misc.2d at 608, 474 N.Y.S.2d 258; *Freeman v. Hubco Leasing, Inc.* (1985), 253 Ga. 698, 703, 324 S.E.2d 462; *Ismael v. Goodman Toyota* (1992), 106 N.C.App. 421, 427, 417 S.E.2d 290. Here, plaintiffs have alleged that the automobile was leased for the

personal use of Szubski. Clearly, the complaint states that the E3205 is a "consumer product."

{¶ 16} In addition, for purposes of the Act, a "supplier" is "any person engaged in the business of making a consumer product directly or indirectly available to consumers." Section 2301(4). In addition, a "warrantor" is defined to mean "any supplier or other person who gives or offers to give a written warranty or who is or may be obligated under an implied warranty." Here, plaintiffs have alleged that MBUSA is in the business of manufacturing, selling, and distributing motor vehicles and related equipment and services, as well as marketing, supplying, and selling written warranties. Therefore, plaintiffs have alleged that MBUSA is both a "supplier" and a "warrantor" under the Act.

{¶ 17} Plaintiffs must also establish that they are "consumers" under the meaning of the Act. The term "consumer" is defined in Section 2301(3) as:

"[A] buyer (other than for purposes of resale) of any consumer product, any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product, and any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract)."

{¶ 18} Accordingly, there are three classes of individuals that may qualify as a "consumer": (1) buyers; (2) transferees; and (3) persons entitled to enforce the warranty. Here, plaintiffs have alleged that they leased the automobile during the time period in which a written four-year or fifty-thousand mile "bumper to bumper" warranty issued by the manufacturer was in effect. Plaintiffs have also alleged that the automobile was subject to an implied warranty of merchantability. This is sufficient to establish that the automobile was transferred to plaintiffs during the effective period of the warranties. Thus, plaintiffs have alleged sufficient facts to show that they are "consumers" within the meaning of the Act.

{¶ 19} MBUSA argues that the Act does not cover breach-of-warranty actions for leased vehicles. Specifically, MBUSA argues that the Act is ambiguous as to the meaning of the terms "buyer" and "sale" as those terms are used in the definitions of "written warranty" and "implied warranty."

{¶ 20} "Written warranty" is defined in Section 2301(6) as:

"(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or

"(B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking,

"which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product."

{¶ 21} In addition, "implied warranty" is defined in Section 2301(7) as "an implied warranty arising under State law * * * in connection with the sale by a supplier of a consumer product."

{¶ 22} According to MBUSA, under the Act, a sale to a consumer with a passage of title is required in order for there to be a written or implied warranty. MBUSA suggests that since the Act does not define "buyer" or "sale" the court should rely on the Uniform Commercial Code ("UCC") to define those terms. Under the UCC, "sale" is defined to require "passing of title." R.C. 1302.01(A)(11). "Buyer" is defined as "a person who buys or contracts to buy goods." R.C. 1302.01(A)(1). In addition, MBUSA argues that the common meaning of "sale" is "the transfer of ownership from one person to another for a price." Merriam–Webster Collegiate Dictionary (19th Ed.2000). According to MBUSA, plaintiffs are neither "buyers" nor parties to a "sale" because there is no transfer of title in a lease transaction. Therefore, MBUSA contends that plaintiffs cannot sue under the Act.

{¶ 23} In support of its argument, MBUSA cites *DiCintio v. DaimlerChrysler Corp.* (2002), 97 N.Y.2d 463, 742 N.Y.S.2d 182, 768 N.E.2d 1121. In *DiCintio*, the New York Court of Appeals held that the Act did not apply to a 36–month lease with an option to buy. The court held that a lessee was not a "consumer" because he was neither a buyer, a transferee, or a person entitled to enforce the warranty. In so holding, the court determined that no "written warranty" or "implied warranty" was in effect during the lease period because no "sale" had occurred as that term is defined under the UCC. Id. at 470–471; 742 N.Y.S.2d 182, 768 N.E.2d 1121. The court reasoned that the lessee enjoyed a different bundle of rights than a buyer, could always have chosen not to buy, and paid less than a buyer who opts for a monthly payment plan. Id. The decision in *DiCintio* expanded on a Florida appellate court holding that the Act's provisions did not apply to a pure automobile lease that offered no purchase option because leases and sales give rise to very different legal obligations. *Sellers v. Frank Griffin AMC Jeep, Inc.* (Fla.App. 1st Dist.1998), 526 So.2d 147, 156. The *DiCintio* court also noted that Congress's inclusion of leases in other consumer protection statutes, such as the Truth in Lending Act, Section 1601 et seq., Title 15, U.S.Code, is evidence that Congress knew how to draft legislation to protect

leases and opted not to include such protection in the Magnuson–Moss Warranty Act. Id. at 472, 742 N.Y.S.2d 182, 768 N.E.2d 1121. Finally, the *DiCintio* court rejected the plaintiff's argument that the Act covered his lease even though it was not a "sale," because the lease provided that after its execution, the vehicle would be assigned to a finance company as "holder." Id. at 474, 742 N.Y.S.2d 182, 768 N.E.2d 1121.

{¶ 24} MBUSA also cites *Diamond v. Porsche Cars N. Am., Inc.* (2002), N.D. Ill. No. 02 C 414, 2002 WL 31155064. The *Diamond* court followed *DiCintio* and found that the lessees of an automobile under a four-year or 50,000–mile bumper-to-bumper warranty were not entitled to enforce the Act. The court reasoned that the lessees were neither buyers nor transferees of a consumer product, since there was no passage of title. The court further found that although the lessor's assignment of its warranty rights qualified the lessees as "persons entitled to enforce the warranty," there was no enforceable warranty as that term is defined in the Act because there was no "sale." The court declined to reach the issue of whether the sale of the vehicle from the dealer to the lessor, prior to or contemporaneous with the lease transaction, is sufficient to trigger coverage under the Act, finding that the purpose of the transaction was for resale.[1] Id.

{¶ 25} Other courts have also held that the Act does not cover leases. See *Voelker v. Porsche Cars N. Am., Inc.* (Feb. 10, 2003), N.D.Ill. No. 02 C 4798, 2003 WL 291909 (citing *DiCintio* and *Diamond,* and holding that "the Act only applies to purchased goods and not to leased products"); *Corral v. Rollins Protective Serv. Co.* (1987), 240 Kan. 678, 732 P.2d 1260 (lease/servicing agreement for an alarm system not subject to the Act because it has no characteristics of a sale); *D.L. Lee & Sons, Inc. v. ADT Sec. Sys., Mid–South, Inc.* (S.D.Ga.1995), 916 F.Supp. 1571 ("[t]here must be an identifiable purchase and sale before the provisions of the Magnuson–Moss Act apply"); *Weisberg v. Jaguar Cars, Inc.* (Mar. 18, 2003), N.D. Ill. No. 02 C 1678, 2003 WL 1337983 (following *DiCintio* and *Diamond* and holding that the Act does not apply to a 48–month lease of an automobile with an option to buy at the end of the lease).

{¶ 26} However, still other courts have held that the Act is applicable to leases. For instance, in *Cohen v. AM Gen. Corp.* (N.D.Ill.2003), 264 F.Supp.2d 616, the United States District Court for the Northern District of Illinois held that the Act applied to the lease of a 1999 American General Hummer where the lease

---

1. MBUSA notes that a similar Magnuson–Moss claim involving an automobile lease was recently dismissed by a common pleas court in *Gardenhire v. MBUSA* (Sept. 4, 2002), Cuyahoga C.P. No. CV–02–472737 (Calabrese, J.). However, the docket does not indicate the court's reasoning for granting MBUSA's motion to dismiss in that case. Even if the court in *Gardenhire* agreed with MBUSA's argument that the Act does not cover leases, that decision is not binding on this court.

terms included an option to buy at the end of the lease period. That court held that the warranty delivered from the manufacturer to the lessor was a written warranty as defined by the Act. Id. at 619. The *Cohen* court reasoned that the terms of the warranty were part of the bargain between the manufacturer and the lessor; therefore, the warranty was issued "in connection with" the sale of the vehicle from the manufacturer to the lessor. Id. Accordingly, the *Cohen* court held that the term "sale," as defined by the Act, "is not limited to transactions between the warrantor and the ultimate consumer." Id.; see, also, *Freeman v. Hubco Leasing, Inc.*, supra, 253 Ga. 698, 324 S.E.2d 462 (a lease that conveys ownership after 48 monthly payments and a final lump-sum payment is actually a sale); *Henderson v. Benson–Hartman Motors, Inc.* (Pa.C.P.1983), 41 U.C.C. Rep. Serv. 782, 1983 WL 160532 (lease with most characteristics of a sale should be treated as a sale by the Magnuson–Moss Act).

{¶ 27} The court in *Cohen*, supra, disagreed with the *DiCintio* and *Diamond* courts with respect to the significance of a lessee's rights as compared to a buyer's rights:

"The Act does not require us to look at the bundle of rights acquired by the purchaser and the lessee. Instead, a plain reading of the Act forces us to simply look for a warranty exchange in connection with a sale. Defendant clearly sold the vehicle to Mister Leasing and, when doing so, made a series of promises in connection with this sale. This is enough for the warranty to meet the first part of the definition of 'written warranty' in 15 U.S.C. § 2301(6)."

{¶ 28} This court agrees with those courts that have found that the Act is applicable to breach-of-warranty actions involving leases. The interpretations in *DiCintio* and cases that concur with it are not required by the language of the Act, as *Cohen* and other opinions show. Moreover, the *DiCintio* interpretation is inconsistent with the purposes of the Act—to protect the ultimate user of the product. Contrary to the view in *DiCintio*, the statutorily defined terms "written warranty" and "implied warranty" do not require the sale to be made to an ultimate consumer with a passage of title to that party. The warranty section contains no such limitation as to the buyer. Its only limitation is that the transaction be made "in connection with" the sale of a consumer product by a supplier to a buyer. Here, the vehicle came with a manufacturer's written warranty at the time it was sold to the lessor. The vehicle is alleged to be a consumer product; therefore, the warranty was made "in connection with" the sale of a consumer product, pursuant to Section 2301(6)(A). Although the lessor would not qualify as a consumer under Section 2301(3) who could enforce the warranty, the lessor is, nonetheless, a buyer under Section 2301(6)(A) to whom a warranty was made and the plaintiffs—transferees of the product—are consumers who may enforce the Act in connection with the consumer product.

{¶ 29} To the extent that a lessee fits the definition of "consumer" by receiving an automobile in a transfer, it would be unreasonable and illogical to conclude that a lessee does not enjoy the same right to enforce a warranty as a purchaser enjoys. The United States District Court in *Cohen,* supra, clearly articulated this point when it made the following observation:

"Plaintiffs here fit squarely within the definition of 'consumer' in that they are entitled to enforce the warranty by the terms of 15 U.S.C. § 2301(3). If we then determine that this warranty does not qualify as a written warranty under the Act, there is nothing for the plaintiffs to enforce. Moreover, when selling the Hummer to Mister Leasing, defendant was aware that Mister Leasing was facilitating a lease and transferring possession of the vehicle to plaintiffs. It knew that plaintiffs would be the users of the vehicle and the only party who would likely seek to enforce the warranty. If they are unable to do so, the assurances of the manufacturer are empty—no party would.be able to enforce the warranty."

{¶ 30} This reasoning applies in the present case. The Act's purposes of consumer protection would not be furthered if the statute were interpreted to exclude lease transactions.

{¶ 31} Here, plaintiffs have set forth allegations that state a cognizable claim under the Act. Specifically, plaintiffs claim that they have suffered damages resulting from the failure of MBUSA and/or its authorized dealerships to meet the obligations under the written and implied warranties. Furthermore, plaintiffs allege that the lessor purchased the vehicle for purposes other than resale. Viewing these allegations as true, plaintiffs' amended complaint shows that they are entitled to bring the instant action under the Act. Accordingly, MBUSA's motion to dismiss must be denied.

## IV. Conclusion

{¶ 32} For the reasons stated above, the motion of defendant Mercedes–Benz, U.S.A., L.L.C. to dismiss Counts I and II of the first amended complaint is hereby denied.

{¶ 33} Pretrial Conference still set for April 7, 2003, at 2:00 p.m. All clients must be present.

{¶ 34} IT IS SO ORDERED.

Judgment accordingly.