CHRISTOPHER MANGOLD *et al.*, Plaintiffs-Appellees, v. NISSAN NORTH AMERICA, INC., Defendant-Appellant.

Third District    No. 3—02—0796

Opinion filed April 30, 2004.

Ross W. Bartolotta and Bruce S. Terlep (argued), both of Swanson, Martin & Bell, of Wheaton, for appellant.

Scott M. Cohen (argued) and Todd M. Friedman, both of Krohn & Moss, Ltd., of Chicago, for appellees.

JUSTICE LYTTON delivered the opinion of the court:

Plaintiffs, Christopher and Erynn Mangold, brought suit against Nissan North America (Nissan) pursuant to the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act (15 U.S.C. § 2301 *et seq.* (2000)) (Act). The complaint alleged that Nissan failed to uphold provisions of its warranties on a vehicle purchased by a financial services company and leased to plaintiffs. Nissan filed a motion to dismiss, contending that leases do not fall under the protection of the Magnuson-Moss Warranty Act. The circuit court of Will County denied Nissan's motion. The court then granted Nissan's petition for interlocutory appeal under Supreme Court Rule 308 (155 Ill. 2d R. 308). We are asked to determine whether automobile lessees may enforce warranties under the Magnuson-Moss Warranty Act. We answer the certified question in the affirmative and remand.

Plaintiffs leased a new 2001 Infiniti I30 at Infiniti of Orland Park. The dealer sold the vehicle to Debis Financial Services, Inc., which leased it to plaintiffs. Nissan supplied a written warranty that covered the vehicle against factory defects for 4 years or 60,000 miles. The warranty was issued to Debis; as part of the lease transaction, Debis assigned its rights under the written warranty to plaintiffs. Plaintiffs assert that without the rights under the written warranty, they would not have entered into the lease.

Almost immediately after plaintiffs leased the car, they began to notice excessive wind noise and brought the vehicle back to the dealership. As a result, repairs were performed; the repair work was covered by the manufacturer's written warranty. After several unsuccessful attempts to repair the wind noise, plaintiffs filed a complaint against Nissan in Cook County. They alleged that Nissan breached its written warranty and an implied warranty of merchantability, and thus they were entitled to revoke their acceptance of the car. All counts were pled under the Magnuson-Moss Warranty Act. The matter was transferred to Will County on *forum non conveniens* grounds.

Nissan filed a motion to dismiss, claiming that the Act provides protection only when an alleged breach of warranty occurs in connection with the sale of a consumer product and does not apply to leases. The trial court denied the motion and Nissan appealed pursuant to Supreme Court Rule 308. The court certified the following question to us: "whether a lessee of an automobile may maintain a cause of action for breach of warranty under the Magnuson-Moss Warranty Act."

## I

Defendants argue that the Act requires that a "sale" be made to a "consumer," and as lessees, plaintiffs are neither purchasers nor consumers.

■ The Act permits "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract," to sue the warrantor for damages; elect repair, replacement, or refund of defective parts; and collect attorney fees. 15 U.S.C. §§ 2310(d)(1), (d)(2) (2000). The Act defines "consumer" as:

> "[1] a buyer (other than for purposes of resale) of any consumer product, [2] any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product, and [3] any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract)." 15 U.S.C. § 2301(3) (2000).

### (a)

A person need only meet one of the three criteria to qualify as a consumer. *Dekelaita v. Nissan Motor Corp.*, 343 Ill. App. 3d 801, 807 (2003). Plaintiffs claim that they are consumers under both the second and third prongs of the Act. The second prong defines a consumer as any person to whom a product is transferred during a warranty's duration. The majority of courts have held that lessees do not qualify as transferees, drawing the Uniform Commercial Code's (UCC) definition of "sale," which includes the "passing of title." 810 ILCS 5/2—106(1) (West 1998). See, for example, *DiCintio v. DaimlerChrysler Corp.*, 97 N.Y.2d 463, 470, 768 N.E.2d 1121, 1124, 742 N.Y.S.2d 182, 185 (2002). Under this interpretation, lessees would not qualify because in a lease title does not pass to them.

Other courts have determined that the language of the Act is clear and that references to the UCC are unnecessary. Thus, when buyers transfer warranty rights to lessees, the lessees become entitled to enforce the warranty against the warrantor and therefore become "consumers." See, for example, *Cohen v. AM General Corp.*, 264 F. Supp. 2d 616, 619 (N.D. Ill. 2003).

■ We agree with the line of cases that finds that the Act contains sufficient language to define "transfer" without looking to the UCC for assistance. Since Debis transferred all its warranty rights to the plaintiffs during the duration of the warranty, plaintiffs were entitled to enforce the warranty. Nothing in the language of the statute sug-

gests that title must pass, and we will not add such a requirement upon review. See *Nottage v. Jeka*, 172 Ill. 2d 386, 392 (1996) (holding that when interpreting statutes, courts should not add requirements or impose limitations that are inconsistent with the plain meaning of the enactment). Therefore, we find that plaintiffs are consumers under the second prong of section 2301(3).

### (b)

Plaintiffs also qualify as consumers under the broader third criterion in the Act, which defines a consumer as: "any other person who is entitled by the terms of such warranty *** or under applicable State law to enforce against the warrantor *** the obligations of the warranty." 15 U.S.C. § 2301(3) (2000). To facilitate the lease, Debis assigned its warranty rights to plaintiffs. Since the warranty does not prohibit an assignment of rights, plaintiffs were entitled to enforce them to their fullest extent, including vehicle repair and replacement. *Collins Co. v. Carboline Co.*, 125 Ill. 2d 498 (1988) (holding that an assignee of warrantee's rights under an express warranty succeeds to all warranty rights).

Moreover, in this case, the dealership actually serviced plaintiffs' vehicle numerous times, and each time the repairs were covered by the warranty. We find no merit in allowing plaintiffs to enforce the warranty for repairs, but denying warranty rights when a violation under the Act is asserted. Since plaintiffs were entitled to enforce the warranty when the vehicle required repair, they qualified as consumers under the third prong.

### II

Defendants argue that even if plaintiffs qualify as consumers, the Act does not apply to them because the warranty was not part of a "sale." The Act's definitions of implied and written warranties both include the language "made in connection with [a] sale."[1]

Defendant looks to legislative intent in arguing that Congress did

---

[1]The Act defines "written warranty" as:

"(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or

(B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the

not intend to cover leases, relying on *DiCintio*, 97 N.Y.2d at 470, 768 N.E.2d at 1125, 742 N.Y.S.2d at 186. See also *D.L. Lee & Sons, Inc. v. ADT Security Systems, Mid-South, Inc.*, 916 F. Supp. 1571 (S.D. Ga. 1995); *Alpiser v. Eagle-GMC-Isuzu, Inc.*, 97 N.C. App. 610, 389 S.E.2d 293 (1990); *Sellers v. Frank Griffin AMC Jeep, Inc.*, 526 So. 2d 147, 156 (Fla. App. 1988). In *DiCintio*, the New York State Court of Appeals held that lessees were not "consumers" because they were neither buyers, transferees, nor persons entitled to enforce the warranty. The court found that no "written warranty" or "implied warranty" was in effect during the lease period because no "sale" had occurred. *DiCintio*, 97 N.Y.2d 463, 768 N.E.2d 1121, 742 N.Y.S.2d 182.

■ We humbly disagree with the New York court. To justify its decision, *DiCintio* referred at length to legislative history and various policy arguments. In Illinois, if legislative intent can be ascertained from the statute's plain language, that intent prevails over any other interpretive aid. *Schawk, Inc. v. Zehnder*, 326 Ill. App. 3d 752, 755 (2001). Thus, we need not examine legislative intent in reviewing the Act if the plain language of the statute sufficiently represents the legislative intent.

■ The plain language of the statute simply requires that warranties under the Act be issued "in connection with the sale" of a consumer product. It does not require a sale to be made to the ultimate consumer with a passage of title to that party and does not forbid the subsequent assignment of the warranty. See *Cohen*, 264 F. Supp. 2d at 619. Given the plain language of the statute, "in connection with [a] sale" means the sale between the dealership and Debis Financial. *Dekelaita v. Nissan Motor Corp. in USA*, 343 Ill. App. 3d 801 (2003).

Since the vehicle was sold to the lessor with a manufacturer's written warranty, the warranty was made "in connection with" the sale, and plaintiffs, as assignees, must be allowed to enforce it. Recent decisions indicate that our opinion is now representative of the majority view. See *Peterson v. Volkswagen of America, Inc.*, No. 03—0955, (Wis. App. 2d Dist. 2004); *Dekelaita v. Nissan Motor Corp. in USA*, 343 Ill. App. 3d 801 (2003); *Cohen*, 264 F. Supp. 2d at 619; *Szubski v. Mercedes-Benz, U.S.A., L.L.C.*, 124 Ohio Misc. 2d 82, 796 N.E.2d 81 (2003); *Voelker v. Porsche Cars North America, Inc.*, 353 F.3d 516 (7th Cir. 2003) (holding that lessees may be "consumers" under the Act).

---

undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product." 15 U.S.C. § 2301(6) (2000).

The certified question is answered in the affirmative, and the cause is remanded for further proceedings.

Certified question answered, cause remanded.

SLATER, J., concurs.

PRESIDING JUSTICE HOLDRIDGE, dissenting:

I respectfully dissent. When the question presented on interlocutory appeal is one of law, the reviewing court answers the question independently of the trial court and reviews the matter *de novo. In re Lawrence M.*, 172 Ill. 2d 523 (1996). Here, we are asked to determine whether the Magnuson-Moss Warranty Act applies to lessees. In order to answer that question we must, of course, look to the statute itself. Does the Act clearly and unambiguously, *i.e.*, expressly, apply to lessees? A review of the Act shows that it is silent as to lessees. The Act states only that a "consumer" may bring suit under its authority:

"(1) Subject to subsections (a)(3) and (e) of this section, a *consumer* who is damaged by the failure of a supplier, warrantor or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief[.]" (Emphasis added.) 15 U.S.C. § 2310(d) (2000).

When we look further into the Act, we find the term 'consumer' is defined under the Act as follows:

"The term consumer means a buyer (other than for purposes of resale) of any consumer product, any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product, and any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract)." 15 U.S.C. § 2301(3) (2000).

Further complicating the issue is the fact that embedded within the meaning of "consumer" is the term "written warranty." The Act defines "written warranty" as:

"(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or

(B) any undertaking in writing in connection with the sale by

a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product." 15 U.S.C. § 2301(6) (2000).

In analyzing these definitions, we must be cognizant of the basic tenants of statutory interpretation. " 'The cardinal rule of statutory construction is to ascertain and give effect to the true intent of the legislature. [Citation.]' " *Schawk, Inc. v. Zehnder*, 326 Ill. App. 3d 752, 755, 761 N.E.2d 192, 194 (2001). " 'The best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning. [Citation.]' " *Schawk*, 326 Ill. App. 3d at 755, 761 N.E.2d at 194. " 'The statute should be evaluated as a whole, with each provision construed in connection with every other section. [Citation.]' " *Schawk*, 326 Ill. App. 3d at 755, 761 N.E.2d at 194. " 'If legislative intent can be ascertained from the statute's plain language, that intent must prevail without resort to other interpretive aids. [Citation.]' " *Schawk*, 326 Ill. App. 3d at 755, 761 N.E.2d at 194. However, a statute is ambiguous if it is capable of more than one reasonable interpretation. *In re B.C.*, 176 Ill. 2d 536, 543 (1997).

Here, I would find that the statute at hand is ambiguous as to whether lessees may sue for breach of warranty. If the case law developing on this issue is any indication, the Magnuson-Moss Warranty Act is most assuredly capable of more than one reasonable interpretation.

Having found the statute ambiguous, I would then resort to standard rules of statutory construction in order to determine the intent of Congress on this issue. One such rule of statutory construction permits us to look to compare statutes that concern the same subject matter and to consider statutes on related subjects. *Anderson v. City of Park Ridge*, 396 Ill. 235, 244 (1947). Here, we have another consumer protection statute for comparison, the Truth in Lending Act (15 U.S.C. § 1638 *et seq.* (2000)) enacted seven years prior to Magnuson-Moss. In that statute, Congress expressly included lessees as consumers protected by that act. One would reasonably assume that, had Congress similarly intended Magnuson-Moss to protect lessees, it would certainly have included express language as contained in the Truth in Lending Act.

I also note that when statutory language is ambiguous, it is appropriate to resort to extrinsic aids of construction such as an examination of legislative history. *Kunkel v. Walton*, 179 Ill. 2d 519, 534 (1997).

Here, when we consider legislative history, it is clear that Congress was warned, in testimony by Professor David Leary, that lessees were not covered under the language as ultimately passed in the Act. Still Congress chose not to change the language of the Act in order to make it clear that lessees were covered under the Act. I would find this to be clear evidence of Congress' intent NOT to include lessees within the protections of Magnuson-Moss.

Because I would find Magnuson-Moss to be ambiguous as to the question of lessees, I would then resort to cardinal rules of statutory construction and find clear evidence that Congress did not intend the Act to cover lessees. I would, thus, answer the certified question in the negative and remand the cause for further proceedings consistent with this finding.