**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-1064**

CHRISTINE SENEY, Individually and as Parent and Next Friend
of I.S. and N.S.; ANTWAN R. SENEY,

> Plaintiffs - Appellants,

> v.

RENT-A-CENTER, INC.; RENT-A-CENTER EAST, INC.,

> Defendants - Appellees.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   James K. Bredar, District Judge.
(1:12-cv-02347-JKB)

Argued:  October 31, 2013          Decided:  December 11, 2013

Before MOTZ and AGEE, Circuit Judges, and Joseph F. ANDERSON,
Jr., United States District Judge for the District of South
Carolina, sitting by designation.

Affirmed by published opinion.  Judge Motz wrote the opinion, in
which Judge Agee and Judge Anderson joined.

**ARGUED:** Daniel Warren Whitney, Sr., WHITNEY & BOGRIS LLP,
Towson, Maryland, for Appellants.  James Charles Mehigan, WILSON
ELSER MOSKOWITZ EDELMAN & DICKER LLP, Washington, D.C., for
Appellees.  **ON BRIEF:** Gerald S. Gaetano, WHITNEY & BOGRIS LLP,
Towson, Maryland, for Appellants.   Peter A. Coleman, WILSON
ELSER MOSKOWITZ EDELMAN & DICKER LLP, Baltimore, Maryland, for
Appellees.

DIANA GRIBBON MOTZ, Circuit Judge:

Christine and Antwan Seney appeal the district court's order compelling arbitration of their breach of warranty claim under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq. (2006). For the reasons that follow, we affirm.

I.

In March 2012, the Seneys entered into a "Rental-Purchase Agreement" with Rent-A-Center, Inc. ("RAC") for a wooden trundle bed and mattress. In that contract, the Seneys agreed to rent the bed for two weeks, with an option to renew the lease. If the couple leased the bed for an additional six months, RAC would transfer title to them. The contract also contained a purchase option. By exercising the option, the Seneys could buy the bed before six months had passed.

Pursuant to this contract, RAC retained the manufacturer's warranty to the bed. RAC did provide, in the rental contract, its own warranty to repair, replace, and service the bed during the term of the lease. In that contract, the parties also agreed to submit any contract dispute to binding arbitration.

In April 2012, RAC delivered the bed to the Seneys' home and assembled it in their son's bedroom. Within a week, the boy complained of itchiness and pain. A doctor diagnosed his condition as bedbug bites, and Mrs. Seney called RAC to

2

complain. The company returned to the home and replaced the bed's mattress. Workers, however, left behind the bedframe, which apparently was also infested with bedbugs. The infestation continued, and Mrs. Seney complained again. This time, RAC removed both the mattress and the frame, but not before dragging them through the Seneys' home. The bed shed bugs, and the infestation spread. RAC paid for a partial fumigation, but the company refused to treat the entire house.

The Seneys filed suit in Maryland state court, alleging a breach of warranty by RAC in violation of the Magnuson-Moss Warranty Act ("MMWA" or "the Act"). RAC removed the case to federal court and filed a motion to compel arbitration. In response, the Seneys claimed that their dispute could not be submitted to arbitration, at least insofar as that arbitration was binding. Relying on regulations promulgated by the Federal Trade Commission ("FTC") pursuant to its authority to interpret the MMWA, the Seneys maintained that RAC could not require binding arbitration as part of a consumer warranty. See 16 C.F.R. § 703.5(j) (2013).

The district court rejected the argument that the FTC regulations ban binding arbitration, and so granted RAC's motion to compel arbitration. The Seneys noted a timely appeal. We review a district court order compelling arbitration de novo.

3

See Peabody Holding Co. v. United Mine Workers of Am., Int'l Union, 665 F.3d 96, 101 (4th Cir. 2012).

## II.

The Seneys contend that the district court erred in holding that the FTC regulations interpreting the MMWA contain no ban on binding arbitration. They maintain that the court conducted "an incomplete legal analysis." Reply Br. 1. Specifically, they maintain that the court failed to recognize that, while the FTC regulations do permit binding arbitration after the parties have engaged in informal dispute resolution, the regulations prohibit binding arbitration before the parties have so engaged. Careful examination of the MMWA, and the FTC regulations promulgated pursuant to it, persuade us that the Seneys are correct.

Congress enacted the MMWA in response to a swell of consumer complaints regarding the inadequacy of warranties to protect consumers' interests. See H.R. Rep. No. 93-1107, reprinted in 1974 U.S.C.C.A.N. 7702, 7708–11. By passing the Act, Congress sought to "improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing" of goods. 15 U.S.C. § 2302(a). To further these goals, Congress provided a private right of action to consumers "damaged by the failure of a supplier, warrantor, or service contractor to comply with . . . a written

4

warranty, implied warranty, or service contract." Id. § 2310(d)(1).

Under the MMWA, consumers may sue in court or submit to "informal dispute settlement procedures" in advance of litigation. Id. § 2310(a)(3). The statute does not define or describe "informal dispute settlement procedures." Instead, Congress provided that the FTC would specify "minimum requirements" for informal dispute resolution. Id. § 2310(a)(2). To that end, the FTC has promulgated a host of regulations describing a variety of "mechanisms" to which consumers may be required to resort before pursuing their claims in court. 16 C.F.R. § 703.1 et seq.

Pursuant to those regulations, a "mechanism" is an "informal dispute settlement procedure which is incorporated into the terms of a written warranty." Id. § 703.1(e). The FTC has interpreted the term broadly: "mechanisms" encompass all nonjudicial dispute resolution procedures, including arbitration. See 40 Fed. Reg. 60,168, 60,210–11 (Dec. 31, 1975). Of importance here, the FTC regulations provide that decisions of these informal dispute resolution mechanisms must be nonbinding. 16 C.F.R. § 703.5(j). In other words, the regulations limit warrantors' ability to insist in their written warranties that consumers submit to binding arbitration as part of a mechanism (an informal dispute settlement procedure). 40

5

Fed. Reg. at 60,211 ("[R]eference within the written warranty to any binding, non-judicial remedy is prohibited by . . . Rule [703] and the Act.").

The FTC regulations, however, distinguish between so-called "pre-dispute" and "post-dispute" binding arbitration. See Davis v. So. Energy Homes, Inc., 305 F.3d 1268, 1280 n.8 (11th Cir. 2002); Walton v. Rose Mobile Homes, LLC, 298 F.3d 470, 481-82 (5th Cir. 2002) (King, C.J., dissenting).[1] "Pre-dispute" binding arbitration refers to parties' employment of binding arbitration as the exclusive means of resolving disputes, i.e., without first obtaining a nonbinding "mechanism" decision. See Walton, 298 F.3d at 481-82 (King, C.J., dissenting); see also 40 Fed. Reg. at 60,210. In general, the FTC regulations prohibit "pre-dispute" binding arbitration. 16 C.F.R. § 703.5(j); 40 Fed. Reg. at 60,210. By contrast, the regulations permit "post-dispute" binding arbitration. 40 Fed. Reg. at 60,211. "Post-dispute" arbitration takes place after parties have first

---

[1] We recognize that the terms "pre-dispute" and "post-dispute," which the parties and other courts have consistently used, are somewhat misleading. Obviously, if the parties seek to resolve a disagreement -- through a "mechanism" or otherwise -- they have a dispute. But however described, the principle is this: the FTC regulations ban a supplier from requiring binding arbitration in a written warranty as the exclusive means of dispute resolution. See 40 Fed. Reg. at 60,210. If the parties first engage in some form of nonbinding dispute resolution, however, the regulations permit the parties to then engage in binding arbitration.

6

mediated their dispute informally through a nonbinding "mechanism." See Walton, 298 F.3d at 482 (King, C.J., dissenting); 40 Fed. Reg. at 60,211. Thus, under the FTC regulations, if the parties first engage in nonbinding dispute resolution, a warrantor may then require a consumer dissatisfied with the "mechanism" decision to submit to binding arbitration. 40 Fed. Reg. at 60,211 ("[N]othing in the Rule . . . precludes the use of any other remedies [e.g., binding arbitration] by the parties following a Mechanism decision.") (emphasis added).[2]

Accordingly, the district court erred in holding that the FTC regulations contain no ban on binding arbitration. The FTC ban is intricate and limited, but it certainly exists.

---

[2] Even within the category of "pre-dispute" binding arbitration, the FTC's ban is not absolute. Although a warrantor may not include a "pre-dispute" binding arbitration clause within the terms of a written warranty, 16 C.F.R. § 703.5(j), the parties may agree to "pre-dispute" binding arbitration in some other document. See 40 Fed. Reg. at 60,211 ("[Although] reference within the written warranty to any binding non-judicial remedy is prohibited . . . , nothing in the Rule precludes the parties from agreeing to use [binding arbitration].") (emphasis added). Thus, if after signing a warranty the parties agree to employ binding arbitration as their only means of redress, the FTC regulations do not ban that preference. Id. This additional exception to the general rule is not implicated in this case.

III.

That the ban exists, however, does not resolve this appeal. The Seneys must also establish that the ban on arbitration applies to their rental agreement with RAC.

Before addressing that most fundamental question, we note that, rather than focusing on it, the parties argue at length about the permissibility of the FTC ban. In doing so, they expose an important tension between two major doctrines of statutory interpretation. In Shearson/American Express, Inc. v. McMahon, the Supreme Court instructed courts to evaluate the arbitrability of statutory rights in light of the liberal "federal policy favoring arbitration." 482 U.S. 220, 226 (1987). McMahon established that if a statute is silent with respect to arbitration, courts should presume its permissibility. Id. at 226–27. McMahon, however, did not address whether agencies should also presume the permissibility of arbitration. The FTC, the agency that promulgated regulations interpreting the MMWA, did not employ a pro-arbitration presumption. See 40 Fed. Reg. at 60,210. Rather, as explained above, it concluded that pre-dispute binding arbitration was impermissible under the Act. 16 C.F.R. § 703.5(j). Pursuant to the Supreme Court's directive in Chevron, U.S.A., Inc. v. Natural Resources Defense Council,

<u>Inc.</u>, that interpretation, if reasonable, should control. 467 U.S. 837, 842–43 (1984).

The way in which <u>Chevron</u> squares with <u>McMahon</u>, however, is uncertain, and courts have divided on the question. <u>Compare</u> <u>Davis</u>, 305 F.3d at 1277–81 (concluding that courts should assess the FTC's arbitration ban under <u>Chevron</u>, but that the ban is unreasonable in light of <u>McMahon</u>) <u>with</u> <u>Walton</u>, 298 F.3d at 475–78 (holding that the <u>McMahon</u> presumption renders the otherwise-ambiguous MMWA clear, obviating the need for <u>Chevron</u> deference) <u>and</u> <u>Kolev v. Euromotors W./The Auto Gallery</u>, 658 F.3d 1024, 1025–30 (9th Cir. 2011), <u>opinion withdrawn</u>, 676 F.3d 867, 867 (9th Cir. 2012) (explaining that courts engage in <u>Chevron</u> analysis, pursuant to which the FTC's regulation is permissible; the FTC need not apply the <u>McMahon</u> presumption because agencies need not subscribe to judicial canons).

We need not enter the fray. This is so because the FTC ban on binding arbitration does not apply to the Seneys' contract with RAC.[3] The FTC regulations limit suppliers' ability to

---

[3] The parties initially failed to brief the applicability of the FTC arbitration ban to the Seneys' contract with RAC; we requested and received supplemental statements of authority on the issue. In their submission, the Seneys contend that we cannot (or should not) address the question because no party raised it. The contention is unpersuasive. <u>See</u> <u>Kamen v. Kemper</u> <u>Fin. Servs., Inc.</u>, 500 U.S. 90, 99 (1991) ("When an issue . . . is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather (Continued)

require binding arbitration of "written warranties" in <u>sales</u> agreements: they do not reach warranties included in <u>leases</u>. Because the Seneys rely on a warranty in a lease (not a sales) agreement, their contract falls outside the FTC regulation banning binding arbitration.

A.

The FTC regulations clearly state that if a supplier provides for dispute resolution by way of a "mechanism," the "[d]ecisions of the [m]echanism shall not be legally binding." 16 C.F.R. § 703.5(j). At the same time, the FTC ban is far from sweeping. The regulations define a "mechanism" as "an informal dispute settlement procedure which is incorporated into the terms of a written warranty." <u>Id.</u> § 703.1(e). In other words, the FTC ban applies only to dispute settlement procedures included in a "written warranty."

The FTC regulations specifically define the term "written warranty" as:

---

retains the independent power to identify and apply the proper construction of governing law."); <u>accord</u> <u>United States ex rel. May v. Purdue Pharma, L.P.</u>, -- F.3d -- (4th Cir. 2013) [No. 12-2278, argued Sept. 20, 2013]. Indeed, the Supreme Court has expressly held that a court may consider an issue like this one, which is "antecedent to and ultimately dispositive of the dispute before it, even an issue the parties fail to identify and brief." <u>U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.</u>, 508 U.S. 439, 447 (1993) (internal quotation marks and alteration omitted).

(1) Any written affirmation of fact or written promise made <u>in connection with the sale</u> of a consumer product by a supplier to a <u>buyer</u> which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or

(2) Any undertaking in writing <u>in connection with the sale</u> by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise or undertaking becomes part of the basis of the bargain between a supplier and a <u>buyer</u> for purposes other than resale of such product.

<u>Id.</u> § 703.1(c) (emphasis added). Thus, as the definition makes plain, for purposes of the FTC regulations, a "written warranty" must implicate a "sale." A promise -- even a written promise -- does not constitute a "written warranty" under the regulations if it is not made "in connection with a sale" or is not "part of the basis of the bargain between a supplier and a buyer." <u>See</u> <u>id.</u>

Here, the promise that RAC made to the Seneys was not "in connection with a sale." The Uniform Commercial Code specifies that a "sale" consists of "the passing of title from the seller to the buyer for a price." U.C.C. § 2-106(1) (1977). In its contract with the Seneys, RAC did not pass title to them. Rather, RAC expressly retained title to the bed unless and until the Seneys purchased the bed or renewed their lease for six

11

months.  The Seneys did not exercise either of these options, and thus title remained with RAC.

For the same reasons, the Seneys do not constitute "buyers" of the bed.  As the Seventh Circuit has noted, a plaintiff cannot purport to be a "buyer" before title has passed to him.  See Voelker v. Porsche Cars N.A., Inc., 353 F.3d 516, 523 (7th Cir. 2003).  That a plaintiff holds a purchase option does not alter the analysis.  Until a plaintiff exercises his option, he remains an option-holder, not a buyer.  See id.  Here, again, the Seneys never exercised their option.  At the time of suit, RAC -- not the Seneys -- held title to the bed, and nothing in the record suggests that the Seneys subsequently took title.

A different result might obtain if the lease of the bed were the "economic equivalent" of a sale.  See Henderson v. Benson-Hartman Motors, Inc., 33 Pa. D. & C.3d 6, 24-26 (Pa. Ct. Com. Pl. 1983).  This is so because a court might then conclude that there is no economic difference between a lease and a sale when, for instance, a lessee pays an amount in rent equal to the full purchase price of the item, including interest.  See J.L. Teel Co. v. Houston United Sales, Inc., 491 So.2d 851, 858-59 (Miss. 1986); Sawyer v. Pioneer Leasing Corp., 428 S.W.2d 46, 53-54 (Ark. 1968); U.C.C. § 1-203.  In that circumstance, the transaction is effectively the same as a sale in which a buyer purchases an item but pays for it over time.  Of course, with a

12

lease, title remains with the lessor, while with a sale, the buyer acquires ownership. But this difference has not prevented some courts from applying the law of sales to this very specific class of leases, even in the MMWA context. See Henderson, 33 Pa. D. & C.3d at 25-26.

Here, however, the Seneys' lease was not the economic equivalent of a sale. Rather, their contract with RAC provided that the Seneys were not required to pay an amount equal to the purchase price of the bed. To be sure, the Seneys could have exercised their renewal or purchase options, at which point they might have become so bound. But they had no obligation to exercise their options -- nor did they elect to do so. Their contract with RAC required only that the Seneys rent the bed for two weeks, for an amount far below the purchase price. Because this transaction bears no indicia of a sale, we cannot treat it as such. Thus, the FTC arbitration ban simply does not apply to the Seneys' rental agreement with RAC.

## B.

In the hope of convincing us otherwise, the Seneys direct us to a host of cases, most of which hold that lessees are appropriate plaintiffs under the MMWA.[4] This may be so. But the

---

[4] See Voelker, 353 F.3d at 525; Cohen v. AM Gen. Corp., 264 F. Supp. 2d 616, 621 (N.D. Ill. 2003); Am. Honda Motor Co. v. Cerasani, 955 So.2d 543, 549 (Fla. 2007); O'Connor v. BMW N. (Continued)

13

fact that the Seneys may (or may not) have a cause of action under the statute does not answer the question here:  must the Seneys initially submit that cause of action to binding arbitration?

All of the cases cited by the Seneys involve facts very different from those in the case at hand.  In every case on which the Seneys rely, a lessor bought a product from a manufacturer and obtained a manufacturer's warranty.  The lessor then <u>assigned</u> the warranty to a lessee, who subsequently sued the <u>manufacturer</u> when the product proved defective.  These courts have concluded that the lessee, who had been assigned the manufacturer's warranty, was entitled to bring a cause of action <u>against the manufacturer</u>.  They reasoned that the lessee held a "written warranty" by virtue of the <u>manufacturer's</u> warranty, made in connection with a sale.  They found it unimportant that the lessee did not participate in the sale.  Rather, according to these courts, for MMWA purposes, as long as the manufacturer

<u>Am., LLC</u>, 905 So.2d 235, 240 (Fla. Dist. Ct. App. 2005); <u>Mesa v. BMW N. Am., LLC</u>, 904 So.2d 450, 453 (Fla. Dist. Ct. App. 2005); <u>Mangold v. Nisson N. Am., Inc.</u>, 809 N.E.2d 251, 253-55 (Ill. App. Ct. 2004); <u>Dekelaita v. Nissan Motor Corp.</u>, 799 N.E.2d 367, 373-374 (Ill. App. Ct. 2003); <u>Ryan v. Am. Honda Motor Co.</u>, 896 A.2d 454, 456 (N.J. 2006); <u>Szubski v. Mercedes-Benz, U.S.A., L.L.C.</u>, 796 N.E.2d 81, 88 (Ohio Ct. Com. Pl. 2003); <u>Peterson v. Volkswagen Am., Inc.</u>, 679 N.W.2d 840, 846 (Wis. Ct. App. 2004); but see <u>Parrot v. DaimlerChrysler Corp.</u>, 130 P.3d 530, 536 (Ariz. 2006) (lessees may not sue under the MMWA); <u>DiCintio v. DaimlerChrysler Corp.</u>, 768 N.E.2d 1121, 1127 (N.Y. 2002) (same).

made a written promise "in connection with a sale" to someone, and that someone assigned the promise to the lessee, the lessee could sue the manufacturer.

We pass no judgment on the holdings of these cases. Right or wrong, they are not helpful here. The Seneys do not sue on the manufacturer's warranty. Indeed, they cannot -- RAC never assigned it to them. The Seneys can and do sue only on RAC's warranty. But that warranty -- to service the bed -- is utterly divorced from a sale. In the cases relied on by the Seneys, the manufacturer's warranty accompanied a sale: the one between the manufacturer and the lessor. Here, RAC's warranty accompanied no sale; the Seneys never bought the bed.

Because the Seneys have not linked RAC's warranty to any sale, they have failed to establish the existence of a "written warranty" under FTC regulations. Accordingly, their attempt to rely on these regulations, which presuppose a "written warranty," is unavailing. For this reason, the binding arbitration clause is enforceable, and so the judgment of the district court is

AFFIRMED.

15