IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| TRAVIS HULL and SHELLY HULL, husband and wife, | ) ) ) | 2 CA-CV 2004-0016 DEPARTMENT A |
| Plaintiffs/Appellees, | ) ) | O P I N I O N |
| v. | ) ) | |
| DAIMLERCHRYSLER CORPORATION, | ) ) ) | |
| Defendant/Appellant. | ) ) ) | |

APPEAL FROM THE SUPERIOR COURT OF GILA COUNTY

Cause No. CV 2001-180

Honorable Robert Duber II, Judge

REVERSED AND REMANDED WITH DIRECTIONS

Krohn & Moss, Ltd.
  By Marshall Meyers and Ian Pryor
Phoenix
Attorneys for Plaintiffs/Appellees

Bowman and Brooke, LLP
  By Negatu Molla and Lori A. Van Daele
Phoenix
Attorneys for Defendant/Appellant

H O W A R D, Presiding Judge.



**¶1** Appellant DaimlerChrysler Corporation appeals from a judgment entered after a jury verdict in favor of appellees Travis and Shelly Hull in the Hulls' "Lemon Law" action. DaimlerChrysler contends the trial court erred in several respects, including denying DaimlerChrysler's motion to dismiss the action because the Hulls had sold the vehicle before trial and were no longer entitled to the relief provided by the statute. Because we agree that the Hulls were not entitled to relief under the Lemon Law after they sold the vehicle, we reverse the judgment and direct entry of judgment in favor of DaimlerChrysler.

**¶2** The relevant facts concerning the sale of the vehicle are not in dispute. In April 2000, the Hulls signed a three-year lease agreement for a Dodge Ram truck from Horne Motor Company. The agreement included a three-year or thirty-six-thousand-mile manufacturer warranty from DaimlerChrysler. Under the agreement, the Hulls would pay a total of $19,147.11 in monthly payments if they returned the vehicle after the three-year period. The lease further stated the Hulls would be charged an excessive use fee of $.15 per mile if they drove the vehicle more than forty-five thousand miles during the lease term, unless they decided to purchase the vehicle.

**¶3** Several months after the Hulls signed the agreement, the truck experienced engine trouble. On December 14, 2000, the vehicle was towed to Horne Motor Company where technicians determined that the vehicle needed a new engine. Although there was an initial dispute on whether the damage was covered under the warranty, DaimlerChrysler ultimately authorized the repairs. Horne replaced the engine and returned the truck to the Hulls on February 14, 2001.

¶4 In March 2001, the Hulls sued DaimlerChrysler, alleging, *inter alia*, a violation of Arizona's Lemon Law. After the Hulls filed their complaint, they continued to use the vehicle for the remainder of the lease period, accruing a total of 67,000 miles on the vehicle. Rather than pay the excess mileage charge, the Hulls chose to purchase the vehicle as the lease agreement allowed, and they continued to drive the vehicle. Then, three weeks before trial, the Hulls sold the vehicle. DaimlerChrysler moved to dismiss the action, arguing that the Lemon Law required the Hulls to return the allegedly defective vehicle. The trial court denied the motion, and the Hulls were ultimately awarded $18,480.66 in damages.

¶5 DaimlerChrysler argues the trial court erred by not dismissing the lawsuit after the Hulls sold the vehicle. It contends the remedies prescribed by the statute specifically require that a defective vehicle be returned to the manufacturer and, thus, that the statute did not provide a remedy once the Hulls sold the vehicle. The interpretation of a statute is a question of law that we review de novo. *Phoenix Newspapers, Inc. v. Ariz. Dep't of Econ. Sec.*, 186 Ariz. 446, 448, 924 P.2d 450, 452 (App. 1996).

¶6 Arizona's Lemon Law requires new motor vehicles to conform to all applicable express warranties. A.R.S. § 44-1262. If a consumer of a motor vehicle reports to the manufacturer a defect or nonconformity covered by the manufacturer's express warranty, the manufacturer, its agents, or its authorized dealers must make the repairs necessary to correct the problem. § 44-1262(A)(2). But, if the vehicle cannot be repaired

after four attempts or is out of service for a cumulative total of thirty or more calender days, A.R.S. § 44-1264(A),

> the manufacturer shall replace the motor vehicle with a new motor vehicle or accept return of the motor vehicle from the consumer and refund to the consumer the full purchase price, including all collateral charges, less a reasonable allowance for the consumer's use of the vehicle.

A.R.S. § 44-1263(A). Once a manufacturer has replaced or repurchased a motor vehicle pursuant to this provision, the manufacturer then must place a notice on the vehicle informing any prospective purchaser that it was reacquired pursuant to the Lemon Law. A.R.S. § 44-1266.

**¶7** Prior to the enactment of Lemon Laws, the only relief available to consumers of a defective vehicle was under the common law, the Uniform Commercial Code, or the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312. 17 Am. Jur. 2d *Consumer Product Warranty Acts* § 49, at 370 (2004). Because these limited remedies did not adequately protect the consumer's interests in a typical faulty vehicle claim, many states, including Arizona, enacted Lemon Laws to provide consumers a remedy directly against the manufacturer of a defective vehicle. *See id.*

**¶8** Although Arizona's Lemon Law provides relief to a consumer of a defective vehicle, this relief is limited to that prescribed by the act. "When a statute creates a right and also creates a remedy for the right created, the remedy thereby given is exclusive." *Register v. Coleman*, 130 Ariz. 9, 14, 633 P.2d 418, 423 (1981); *see also Blankenbaker v. Jonovich*, 205 Ariz. 383, ¶ 18, 71 P.3d 910, 914 (2003). In this case, the statute mandates that, if the

4

vehicle cannot be timely repaired, the consumer is entitled to either a replacement vehicle or a refund of the purchase price. § 44-1263(A). Both of these prescribed remedies require the consumer to return the nonconforming vehicle to the manufacturer. Accordingly, the trial court erred in not dismissing the Hulls' Lemon Law claim once the court determined the Hulls could not return the vehicle.

¶9 Despite the clear language of the statute, the trial court relied on *Jennings v. Lee*, 105 Ariz. 167, 461 P.2d 161 (1969), to find that the Hulls were entitled to the statutory remedies even after they had sold the vehicle. The trial court correctly noted that both *Jennings* and this case involve a property dispute in which the plaintiffs no longer possessed the property in question. *See id.* at 172, 461 P.2d at 166. But the *Jennings* case involved a rescission of a purchase of real property based on common law fraud by the seller; it did not involve a statutory right or remedy against a manufacturer as here. *See id.* And, because it is not the province of the courts to engraft common law remedies onto statutory schemes, *see Blankenbaker*, any extension of a statutory remedy is for the legislature. Thus, the court inappropriately applied *Jennings*.

¶10 Although the issue of whether a consumer must return a vehicle before the remedies of the Lemon Law become available is one of first impression in Arizona, we find the case law of other jurisdictions persuasive. In *Mercedes-Benz of North America, Inc. v. Garten*, 618 A.2d 233, 241-42 (Md. Ct. Spec. App. 1993), a Maryland appellate court held that a plaintiff had waived his available remedy under that state's Lemon Law when he had traded the defective vehicle for a new vehicle. Similarly, in *Guidry v. Ford Motor Co.*, 868

5

So. 2d 945, 949 (La. Ct. App. 2004), a Louisiana appellate court found that the remedies available under the Louisiana Lemon Law, which is analogous to our statute, were no longer available once the vehicle had been returned at the end of the lease period. In *Buford v. General Motors Corp.*, 451 S.E.2d 293, 299 (N.C. 1994), the North Carolina Supreme Court held that, when a consumer receives a refund under that state's Lemon Law, the consumer may not retain the defective vehicle. And, in *Pfeiffer v. Ford Motor Co.*, 517 N.W.2d 76, 79 (Minn. Ct. App. 1994), a Minnesota appellate court required dismissal of the plaintiffs' Lemon Law complaint because they had failed to tender the motor vehicle to the manufacturer. The Hulls have not directed our attention to any cases holding to the contrary.

¶11    Moreover, the *Pfeiffer* court noted that allowing the purchaser to convey the vehicle to another party without the notice required by the Lemon Law would defeat one of the primary purposes of the law, stating:

> [S]uch a requirement is consistent with the overall purpose of the statute not only to recompense those actually harmed by the sale of defective automobiles, but to protect subsequent consumers as well. . . . We believe it is inconsistent to allow a Lemon Law recovery, while allowing the same injured party to pass the defective auto on to another consumer without notice of the warranty protections provided to the first owner.

*Id*. at 80. In addition, the *Buford* court found that allowing a plaintiff to recover damages without first returning the vehicle would overcompensate successful consumers to the detriment of the manufacturer, who would likely pass the additional expense to future consumers. 451 S.E.2d at 300. Thus, in addition to the persuasive case law of other states,

6

strong public policy concerns support our conclusion that a consumer is not entitled to relief under Arizona's Lemon Law if the consumer no longer possesses the vehicle.

¶12    The Hulls argue, however, that, because this transaction involved a lease, they were legally required to surrender the vehicle to the lessor when the lease expired.[1]  They contend that DaimlerChrysler "seeks to capitalize on [the Hulls'] lease expiration and forced use" by using this action as a means to nullify its liability.  We agree that the statute, as written, creates a potential dilemma for consumers who wish to assert a Lemon Law action on their leased vehicles.  The duration of a lawsuit may exceed the term of the lease period.  And, because the statute requires that a consumer be able to return the vehicle to be entitled to the remedies of the Lemon Law, a consumer whose lease expires before a lawsuit is resolved must either purchase the vehicle or risk having the Lemon Law portion of any lawsuit dismissed.

¶13    Although we are concerned that such a requirement creates certain hardships for consumers who lease rather than purchase their vehicles outright, the crafting of such a statutory remedy is the province of the legislature, not the courts.  *See Blankenbaker*.  Modification of such legislation is often the result of legislative compromises, which we cannot predict.  We also note that these consumers retain any common law or statutory remedies other than the Lemon Law.  Moreover, the Hulls were not faced with the dilemma

---

[1]The Hulls contend that the term "purchase" in A.R.S. § 44-1263(A) must be interpreted to include a lease.  DaimlerChrysler has not argued below or here that the lease was not a purchase, and we assume, but do not decide, that the Lemon Law applies to leased vehicles.

of purchasing the vehicle to retain their lawsuit. Instead, they voluntarily chose to purchase the vehicle at the end of the lease period to avoid the extra milage fee and then retained possession and actively used the vehicle until three weeks before trial. Accordingly, our concerns about the additional hardships for lease consumers are less compelling here.

¶14 The Hulls also argue that they possessed the right to mitigate their damages by selling the vehicle to stop any further depreciation. "A party's failure to mitigate damages may be invoked to negate and reduce damages 'where the party by its own voluntary activity has unreasonably exposed itself to damage or increased its injury.'" *SDR Assocs. v. ARG Enters., Inc.*, 170 Ariz. 1, 4 n.2, 821 P.2d 268, 271 n.2 (App. 1991), *quoting McCormick on Damages* § 34, at 131 (1934); *see also Life Investors Ins. Co. of Am. v. Horizon Res. Bethany, Ltd.*, 182 Ariz. 529, 534, 898 P.2d 478, 483 (App. 1995). But the only "damages" contemplated by the Lemon Law are either a replacement vehicle or a return of the purchase price and collateral charges. Because their sale of the vehicle three weeks before trial did not affect either of these elements, the Hulls' sale of the vehicle was not a proper mitigation of their damages.

¶15 Finally, the Hulls argue that DaimlerChrysler was barred by laches from raising the issue of the vehicle sale because it knew that the vehicle had been leased and that the Hulls could lose the vehicle. "Laches is a defense when lack of diligence on the part of the plaintiff results in injury or prejudice to the defendant." *Mobile Disc. Corp. v. Schumacher*, 139 Ariz. 15, 18, 676 P.2d 649, 652 (App. 1983). DaimlerChrysler raised the issue of the vehicle sale as soon as it became aware of it. And the Hulls' argument ignores the fact that

8

they purchased the vehicle after the lease expired and then sold it three weeks before trial. Furthermore, DaimlerChrysler points to a letter of January 17, 2001, from the Hulls' attorney stating that the Hulls intended to retain the vehicle and "use it to the extent necessary to preserve it, to protect its security interest, and to minimize [DaimlerChrysler's] damages." But the critical determination is that, as a matter of law, when they sold the vehicle, the benefits of the Lemon Law became unavailable to them. Therefore, DaimlerChrysler was not precluded by laches from asserting its defense.

¶16 Because a consumer is not entitled to relief under Arizona's Lemon Law if the consumer cannot return the vehicle to the manufacturer because the consumer no longer possesses the vehicle, the trial court erred by denying DaimlerChrysler's motion to dismiss the complaint based on the Hulls' sale of the vehicle. Because our holding is dispositive of DaimlerChrysler's liability under the Lemon Law, we need not reach its remaining arguments. We reverse the trial court's judgment and remand the case with instructions to enter judgment in favor of DaimlerChrysler.

_____
JOSEPH W. HOWARD, Presiding Judge

CONCURRING:

_____
J. WILLIAM BRAMMER, JR., Judge

_____
PETER J. ECKERSTROM, Judge