108 P.3d 922

**Bill PARROT, Plaintiff–Appellant,**

v.

**DAIMLERCHRYSLER CORPORATION,
Defendant–Appellee.**

**No. 1 CA–CV 04–0121.**

Court of Appeals of Arizona,
Division 1, Department C.

Feb. 24, 2005.

Krohn & Moss, Ltd., Phoenix, By Marshall Meyers, for Plaintiff–Appellant.

Bowman and Brooke, L.L.P., Phoenix, By Negatu Molla and Nicole M. Seder, for Defendant–Appellee.

## OPINION

EHRLICH, J.

¶ 1 Bill Parrot appeals from the summary judgment for the DaimlerChrysler Corporation ("Chrysler") that precluded him from pursuing his claims under the Magnuson–Moss Warranty Act, 15 U.S.C. § 2310(d)(1) (1998) ("Magnuson–Moss Act" or "Act"), and the Arizona Motor Vehicle Warranties Act ("Lemon Law"), Ariz.Rev.Stat. ("A.R.S.") § 44–1261 *et seq.* (2003). For the following reasons, we reverse the judgment and remand this matter for appropriate further proceedings.

### FACTS AND PROCEDURAL HISTORY

¶ 2 Parrot[1] leased a 2000 Jeep Cherokee ("Jeep" or "vehicle") manufactured by Chrysler from Pitre Chrysler Plymouth Jeep Eagle ("Pitre") in Scottsdale, Arizona. When Pitre executed its lease with Parrot, it simultaneously assigned the lease to the lender, Chrysler Financial Company, L.L.C. ("Chrysler Financial"), but Pitre remained the legal titleholder of the vehicle.

¶ 3 The lease declared that the Jeep would be subject to a "New Vehicle Written Warranty Provided by the Manufacturer." Accordingly, Parrot was given a warranty booklet that stated that the vehicle had a three-year/36,000–mile manufacturer's warranty and explained:

[t]he Basic Limited Warranty covers the cost of all parts and labor needed to repair any defective item on your vehicle that was supplied by DaimlerChrysler Motors Corporation—that is, defective in material, workmanship, or factory preparation. There is no list of covered parts since the only exception is tires. You pay nothing for these repairs. These warranty repairs or adjustments—including all parts and labor connected with them—will be made by your dealer at no charge, using new or remanufactured parts.

Parrot was directed to take the Jeep to any authorized Chrysler dealer for any warranty repairs.

¶ 4 Soon thereafter, the Jeep developed multiple problems, primarily a noise in the rear of the vehicle, that prompted Parrot to take it to authorized dealers for repair six times within two years of executing the lease. During that time, Parrot gave Chrysler one "final opportunity" to cure the Jeep's problems, but a Chrysler representative inspected

1. Debra Parrot was also named as a lessee on the     vehicle, but she is not a party to this litigation.

the vehicle and deemed the noise to be normal.

¶ 5 Parrot hired a certified American Society of Engineers Master Automotive Technician to inspect the Jeep; the technician found significant problems with the vehicle. When the problems then continued and were not repaired by Chrysler dealers to Parrot's satisfaction, Parrot filed suit, alleging breaches of written warranties pursuant to the Magnuson–Moss Act and the Lemon Law.

¶ 6 Parrot also continued to attempt to get the vehicle repaired. When he was unsuccessful, he returned the vehicle.

¶ 7 Each party filed a motion for summary judgment. As he had stated in his complaint, Parrot argued that he was a "consumer" within the meaning of prongs two and three of the Magnuson–Moss Act and the Lemon Law. Chrysler insisted that neither the Act nor the Lemon Law applied to a leased vehicle. The superior court agreed with Chrysler and granted its motion. It later denied Parrot's motion for reconsideration, and, ultimately, a final judgment granting Chrysler summary judgment and denying Parrot's motions for summary judgment and for reconsideration was entered. Parrot appealed, presenting the following issues:

1. Whether the superior court erred in ruling that the Magnuson–Moss Act does not apply to a leased vehicle;

2. Whether the superior court erred in ruling that the Lemon Law does not apply to a leased vehicle; and

3. Whether the superior court erred in denying Parrot's motion for summary judgment on his Lemon Law claim.

*DISCUSSION*

¶ 8 A summary judgment *is* reviewed de novo. *Great Am. Mortgage, Inc. v. Statewide Ins. Co.,* 189 Ariz. 123, 124–25, 938 P.2d 1124, 1125–26 (App.1997). We affirm the judgment if there are no genuine, factual issues in dispute and the moving party is entitled to judgment as a matter of law. *Id.*

¶ 9 Additionally, an issue of statutory interpretation is one of law decided de novo by this court. *Zamora v. Reinstein,* 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996); *Great Am. Mortgage, Inc.,* 189 Ariz. at 125, 938 P.2d at 1126. In interpreting a statute, our task is to follow the intent of the legislature. *Mail Boxes, etc. U.S.A., v. Industrial Comm'n of Ariz.,* 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995); *State v. McDermott,* 208 Ariz. 332, 334 ¶ 5, 93 P.3d 532, 534 (App. 2004); *see Cairns v. Franklin Mint Co.,* 292 F.3d 1139, 1147 (9th Cir.2002). If the statute is "clear and unambiguous," our interpretation goes no farther than the text; we do not use other rules of statutory construction. *McDermott,* 208 Ariz. at 334 ¶ 5, 93 P.3d at 534. *See Canon School Dist. No. 50 v. W.E.S Constr. Co., Inc.,* 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994) (noting that, when a statute's "language is plain and unambiguous, courts generally must follow the text as written"); *Janson v. Christensen,* 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991) (expecting the statute's own language to be "the best and most reliable index of a statute's meaning"). Rather, "we consider the statutory scheme as a whole and presume that the legislature does not include statutory provisions which are redundant, void, inert, trivial, superfluous, or contradictory." *Id.* (citations omitted). If, however, a statute is ambiguous, "we consider the statute's context, subject matter, historical context, effects and consequences, and spirit and purpose" as well as its legislative history. *J.L.F. v. Ariz. Health Care Cost Containment Sys.,* 208 Ariz. 159, 162 ¶ 15, 91 P.3d 1002, 1005 (App.2004) (citations omitted); *see BedRoc Ltd.,* 541 U.S. at 186, 124 S.Ct. at 1595.

*A. Magnuson–Moss Warranty Act*

¶ 10 Under the Magnuson–Moss Act, a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty ... may bring suit for damages and other legal and equitable relief[.]

15 U.S.C. § 2310(d)(1). While the Act then uses three "prongs" to define a "consumer," a plaintiff need only meet one definition to

qualify and make a claim. *DiCintio v. DaimlerChrysler Corp.*, 97 N.Y.2d 463, 742 N.Y.S.2d 182, 768 N.E.2d 1121, 1124 (2002); *Mangold v. Nissan N. Am., Inc.*, 347 Ill. App.3d 1008, 284 Ill.Dec. 129, 809 N.E.2d 251, 253 (2004); *see Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 523–24 (7th Cir. 2003) (analyzing the three categories of "consumer" under the Magnuson–Moss Act, a lessee qualifies under prong three).

¶ 11 Prong one defines "consumer" as "a buyer (other than for purposes of resale) of any consumer product." 15 U.S.C. § 2301(3) (1998). Parrot has never made this claim.

¶ 12 Prong two defines a "consumer" as

> any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product

and prong three defines a "consumer" as

> any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract).

There is a split among the courts of various jurisdictions interpreting prongs two and three. Some courts have looked at the Uniform Commercial Code ("UCC") to define the Magnuson–Moss Act's undefined terms because it was "enacted against the backdrop of the UCC." *DiCintio*, 742 N.Y.S.2d 182, 768 N.E.2d at 1124; *Voelker*, 353 F.3d at 523. For example, the court in *DiCintio* held that a lessee cannot be a "transferee" under prong two because the UCC defines "transfer" as the "passing of title" and a lessee does not receive title when he leases a vehicle. 742 N.Y.S.2d 182, 768 N.E.2d at 1124. Likewise, some courts have held that a lessee cannot have a "written warranty" under prong two or prong three because that would require a "sale" and the UCC definition of "sale" requires a transfer of title to the lessee. *See id.; Sellers v. Frank Griffin AMC Jeep, Inc.*, 526 So.2d 147, 155 (Fla.App.1988). Other courts have held that it is unnecessary to look at the UCC to define the Magnuson–Moss Act's terms because the statute is clear on its face. *See Mangold*, 284 Ill.Dec. 129, 809 N.E.2d at 253 (deciding that nothing in the statute implies that "transfer" means that title must pass); *Cohen v. AM Gen. Corp.*, 264 F.Supp.2d 616, 620 (N.D.Ill.2003) (holding that the plain language of the Act "does not require [the court] to look at the bundle of rights acquired by the purchaser and the lessee" to determine if the lessee is a "consumer").

¶ 13 The plain language of the Magnuson–Moss Act's prong two defines "consumer" as "any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product." The phrase "such product" necessarily refers to "product" as used in prong one, i.e., "any consumer product." Thus, under prong two, a party is a "consumer" if "any consumer product" is transferred to that party during the warranty's duration, regardless of the purpose of the original sale. In other words, the consumer product need not be a result of a sale to a buyer "other than for purposes of resale" as required by prong one.

¶ 14 Chrysler asserts that Parrot cannot be a prong two consumer because the word "transferred" refers to a legal transfer of title and Parrot never had legal title. The Magnuson–Moss Act does not define "transferred," but we agree with the courts that have held that the Act's use of the word "transfer" plainly refers to the physical transfer of a consumer product and not to the legal transfer of its title. *See Dekelaita v. Nissan Motor Corp. in USA*, 343 Ill. App.3d 801, 278 Ill.Dec. 649, 799 N.E.2d at 371 (2003); *Mangold*, 284 Ill.Dec. 129, 809 N.E.2d at 253. That meaning fits squarely within the plain language of the Act and is logical when viewed in light of prong one, which requires a sale and obviates the need for a sale requirement in prong two. There is no need to look at the UCC to define "transferred" as a passing of title because the Act's language is sufficient for interpretation, and we will not add statutory requirements when they do not exist. *See Mangold*, 284 Ill.Dec. 129, 809 N.E.2d at 253; *see also City of Phoenix v. Butler*, 110 Ariz. 160, 162, 515 P.2d 1180, 1182 (1973) ("The choice of the appropriate wording rests with the legisla-

ture and the court may not substitute its judgment for that of the Legislature.").

■ ¶ 15 Chrysler also argues that Parrot is not a prong two "consumer" because he did not have a "written warranty," which the statute defines as either

any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or

any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

15 U.S.C. § 2301(6)(A)-(B). The plain language of the statute only requires that a written warranty be "made in connection with the sale" of a consumer product by "a supplier" to "a buyer." *Mangold,* 284 Ill. Dec. 129, 809 N.E.2d at 254 n. 1; *see also Cohen,* 264 F.Supp.2d at 620; *Szubski v. Mercedes–Benz, U.S.A., L.L.C.,* 124 Ohio Misc.2d 82, 796 N.E.2d 81, 88 ¶ 28 (2003) (stating that the ultimate consumer need not be the legal titleholder to make a Magnuson–Moss Act claim).

¶ 16 It is true that some courts have interpreted "buyer" in the definition of "written warranty" to mean only a buyer "for purposes other than resale," *Voelker,* 353 F.3d at 524; *see Cohen,* 264 F.Supp.2d at 619 (noting that the Magnuson–Moss Act requires a court to look at the purpose for sale and, because the purpose was for lease and not resale, a lessee could make a Magnuson–Moss Act claim), but we disagree with that interpretation of "buyer" as found in the definition of "written warranty" for two reasons: First, the Act does not give a specific definition of "buyer" applicable to all uses of

that term in the Act. Second, the reference to "buyer" in the definition of "written warranty" does not restrict "buyer" to one who purchases a consumer product "(other than for purposes of resale)." That parenthetical restriction only exists in prong one's use of the word "buyer." *See Szubski* at 796 N.E.2d at 88 ¶ 28 (holding that the definition of "written warranty" makes no limitation on "buyer"). The fact that the legislature used a restriction in one section of the statute but not in another section of the statute indicates that it only intended the restriction to apply where designated. *See Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983), *quoting United States v. Wong Kim Bo,* 472 F.2d 720, 722 (5th Cir. 1972) ("[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."); *see also Bigelsen v. Bd. of Med. Examiners,* 175 Ariz. 86, 91, 853 P.2d 1133, 1138 (App.1993) (stating that when a statute uses a specific phrase in some sections but not in others, a court cannot read that phrase into the section from which it was excluded); *Board of Regents v. Public Safety Retirement Fund Mgr.,* 160 Ariz. 150, 157, 771 P.2d 880, 887 (App.1989) (same).

¶ 17 Congress' intent is further made evident by the fact that it not once but twice used the clarifying parenthetical "(or service contract)" to define two of its uses of the word "warranty" in the same statute. Had it intended for the restriction of "buyer" to apply in more than one place in the Magnuson–Moss Act, it would have repeated the clarifying parenthetical in the other portions of the Act where the restriction was intended.

¶ 18 Based on the Magnuson–Moss Act's language, lessor Pitre may not have been a "consumer" who could make a claim under the Act because of the restricted definition of "buyer" in prong one. Pitre nonetheless was "a buyer" for the purpose of being able to transfer the vehicle's warranty under prong two, making Parrot a lessee entitled to enforce the warranty. *See Szubski,* 796 N.E.2d at 88 ¶ 28 (stating that, although a lessor

could not be a consumer and enforce a warranty under the Act, a lessor could be a buyer who received a warranty at purchase and could transfer it, and a lessee could enforce the transferred warranty). Chrysler in turn qualified as a "supplier" under the Act because it was "engaged in the business of making a consumer product directly or indirectly available to consumers" and it made the vehicle available to Pitre, "a buyer." 15 U.S.C. § 2301(4).

¶ 19 Under prong two, a written warranty must be transferred during its "duration." The warranty booklet that Parrot received stated that the warranty would begin upon either "the date you take delivery of the vehicle" or "the date when the vehicle was first put into service—for example, as a dealer 'demo' or as a DaimlerChrysler Corporation company vehicle." It does not define the phrase "put into service," but, like the examples, the Jeep was "in service" when Parrot took delivery because it already had thirty miles on its odometer. *See Szubski*, 796 N.E.2d at 82 ¶ 4 (holding that vehicle that had been driven seventeen miles when the lessor purchased the car was covered by manufacturer's warranty). Additionally, it would be a "hyper-technical and imprecise" interpretation of the Act to hold that Parrot is not a "consumer" only because the warranty went into effect simultaneously with his lease and not a moment sooner. *See Dekelaita*, 278 Ill.Dec. 649, 799 N.E.2d at 372 n. 3 (holding that the timing of the sale could not be determinative in deciding if the warranty was in its "duration"); *but see Voelker*, 353 F.3d at 524 (concluding that, because the warranty was not effective until the lessee took possession, the lessee did not obtain the vehicle warranty during its duration). Although the effective time of the warranty might as a practical matter have been simultaneous with Parrot's taking delivery of the vehicle, the warranty nonetheless existed in anticipation of the actual delivery. It therefore was transferred during its duration.

¶ 20 Moreover, if neither party can enforce the warranty as Chrysler suggests, the manufacturer's promises and the warranty are meaningless, which is contrary to both the Magnuson–Moss Act's plain language and its legislative intent to protect consumers. *See Cohen*, 264 F.Supp.2d at 621. Because the warranty was given to Pitre (buyer) "in connection with the sale" of the vehicle by Chrysler (supplier), and the vehicle was later transferred to Parrot (lessee) during the warranty's "duration," Parrot is a prong two "consumer."

¶ 21 Parrot also qualifies as a "consumer" under prong three's definition as

> any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract).

¶ 22 We have determined that Parrot had a "written warranty," which also applies to prong three. Chrysler, however, argues that the cases from those courts that have found a lessee to be a "consumer" under prong three are distinguishable because those lessees were given assignments of the lessors' warranty rights, allowing the lessees to enforce their warranties under state law. *See Voelker*, 353 F.3d at 525; *Szubski*, 796 N.E.2d at 82 ¶ 4; *Cohen*, 264 F.Supp.2d at 619. Chrysler maintains that neither Pitre nor Chrysler Financial ever assigned warranty rights to Parrot. Specifically, Chrysler argues that, although Parrot's lease states that "[t]he leased Vehicle is subject to the following express warranties ... New Vehicle written warranty provided by the manufacturer or distributor," this language falls short of an actual assignment to Parrot. We disagree.

■ ¶ 23 In Arizona, a valid assignment is one that meets the requirements of a valid contract, including the identity of the parties, legal capacity of the parties to contract, legal subject matter, consideration and mutual assent. *Certified Collectors, Inc. v. Lesnick*, 116 Ariz. 601, 603, 570 P.2d 769, 771 (1977). The title of the document is not decisive. *See id.* (holding that, although the parties executed an "Assignment," it was not a valid assignment because it identified only the consideration and no other contractual elements).

■ ¶ 24 In addition,

there must be evidence of an intent to assign or transfer the whole or part of some specific thing, debt, or chose in action, and the subject matter of the assignment must be described sufficiently to make it capable of being readily identified. *Id.* If the intent to assign is not clear from the document alleged to have created the assignment, the intent can be discerned from other evidence. *See Sherman v. First Am. Title Ins. Co.*, 201 Ariz. 564, 570 ¶ 17, 38 P.3d 1229, 1235 (App.2002) (holding that the record contained no evidence of the intent of the assignment).

¶ 25 In the present case, all of the essential elements of a contract existed to have created a valid assignment. The lease identified the parties as Pitre (lessor) and Parrot (lessee), and each had a legal capacity to enter a contract. The subject of the contract was the lawful lease of a vehicle. Consideration existed; Parrot paid $3750 at the "lease signing or delivery" and agreed to make monthly payments of $300.85 in exchange for leasing the Jeep, including the assurances of its warranty.

¶ 26 Mutual assent also was present with an "intent to assign or transfer" the use of the vehicle with its warranty. The lease that Parrot signed declared that the Jeep carried a "New Vehicle Written Warranty Provided by the Manufacturer," and he was given a "Warranty Information" booklet that stated that the vehicle had a three–year/36,000–mile manufacturer's warranty. Another section of the booklet was titled "Your Legal Rights Under These Limited Warranties," and it proclaimed that "[t]hese warranties give you specific legal rights." In addition, a third section stated that,

> [a]s the vehicle owner, you are responsible for the performance of the required maintenance listed in your owner's manual. . . .
>
> You are responsible for presenting your vehicle to a DaimlerChrysler Motors Corporation dealer as soon as a problem exists. . . .
>
> As the vehicle owner, you should also be aware that DaimlerChrysler Motors Corporation may deny your warranty coverage if your vehicle or a part has failed due to abuse, neglect, improper maintenance or unapproved modifications.

¶ 27 The language of the Pitre/Parrot lease, which made reference to the vehicle's warranty, demonstrates that Pitre intended and acted to assign its warranty rights to Parrot. The fact that the lease did not include the words "assign" or "assignment" is irrelevant. The lease advised Parrot of the warranty, and the warranty advised Parrot of his "legal rights." It was Parrot's understanding when he leased the Jeep that Pitre had transferred to him the 36,000 mile/three-year warranty. Likewise, Pitre knew that Parrot would be using the vehicle for the next three years, and Pitre intended that Parrot be the person enforcing the warranty. Indeed, Chrysler conceded that, when it leases vehicles, the lessee gets "a full factory warranty and the right to enforce it." A valid assignment existed, and Parrot qualified as a prong three "consumer" because he was entitled to enforce the warranty under state law consistent with this assignment.

¶ 28 Moreover, the plain language of the statute does not require an assignment. Prong three is a "catch-all" provision that applies broadly to "any other person who is entitled" to enforce the warranty by either its terms or by law. *Dekelaita*, 278 Ill.Dec. 649, 799 N.E.2d at 372. Accordingly, it does not need to contain the word "lease" or "lessee"; such specificity would be both unnecessary and arguably limiting because a lessee is automatically included with other non-owner users entitled to enforce the warranty. Therefore, even without an assignment whereby Parrot could enforce the warranty under state law, he would still be entitled to enforce the warranty by its terms as described above. We agree with the court in *Mangold* that there is no merit in a manufacturer's contention that a plaintiff may be allowed to "enforce the warranty for repairs, but [be] den[ied] warranty rights when a violation under the Act is asserted." 284 Ill.Dec. 129, 809 N.E.2d at 254.

¶ 29 Although, given the plain statutory language, we need not look to legislative intent to interpret the Magnuson–Moss Act, this resolution does further the Act's stated goal to better protect consumers. *Szubski*,

796 N.E.2d at 88 ¶¶ 28, 30; *Cohen*, 264 F.Supp.2d at 621. Its purpose of protecting the ultimate users of consumer products neither could nor would be served if the Act were interpreted to exclude leases. *Szubski*, 796 N.E.2d at 88 ¶ 30.

¶ 30 Because Parrot was a "consumer" under prongs two and three, he was entitled to pursue his Magnuson–Moss Act claim. Thus, the superior court erred in granting summary judgment to Chrysler based on its finding that the Act did not apply to leases.

### B.   Arizona Lemon Law

¶ 31 Arizona's Lemon Law requires manufacturers and their agents or authorized dealers to either replace a vehicle or accept the vehicle's return and refund the price to the consumer if the vehicle does not conform to its express warranties after a reasonable number of attempts at repair. A.R.S. §§ 44–1262(A) (2003), 44–1263(A) (Supp.2004). "Consumer" is defined in A.R.S. § 44–1261(A)(1) (2003) as:

1.  "the purchaser, other than for purposes of resale, of a motor vehicle";

2.  "any person to whom the motor vehicle is transferred during the duration of an express warranty applicable to the motor vehicle"; or

3.  "any other person entitled by the terms of the warranty to enforce the obligations of the warranty."

¶ 32 For the most part, Arizona's Lemon Law and the Magnuson–Moss Act are identical, differing only in the following respects: the Lemon Law applies only to motor vehicles whereas the Act applies to all consumer products; the Lemon Law applies only to express warranties whereas the Act applies to implied and express warranties; and a definition of "written warranty" present in the Magnuson–Moss Act is not included in the Lemon Law. Aside from these differences, the analysis of the Lemon Law and the Act are virtually the same.

¶ 33 Here, as in his Magnuson–Moss Act claim, Parrot is not asserting that he is a "consumer" under prong one of the Lemon Law, and thus we need not address that issue. Parrot is, however, a prong two "consumer" under the Lemon Law based on the above analysis of the Magnuson–Moss Act's prong two definition of "consumer" because the vehicle was transferred to Parrot during the express warranty's duration. Parrot also qualifies as a prong three "consumer" under the Lemon Law based on the above analysis of the Act's prong three definition of "consumer" because Parrot is entitled to enforce the warranty.

¶ 34 Chrysler argues that subsection (C) of A.R.S. § 44–1261 excludes leases because it states that "[t]he provisions of this article do not apply to a sale of a motor vehicle to a purchaser for the purpose of resale for profit . . . ." We disagree that this language precludes all Lemon Law claims by a lessee. The plain language of the statute precludes only Lemon Law claims by a "purchaser" who buys a vehicle to resell for profit. Parrot was not such a person; he was a lessee entitled to enforce the warranty. Nothing in subsection (C) precludes a lessee from qualifying as a prong two or prong three "consumer" under the Lemon Law.

¶ 35 This court recently reversed a Lemon Law verdict for a lessee because the lessee had sold the vehicle and thus could not return it to the manufacturer as required by the Lemon Law. *Hull v. DaimlerChrysler Corp.*, 209 Ariz. 256, 259 ¶ 16, 99 P.3d 1026, 1029 (App.2004). To have held otherwise would have provided the lessee with double recovery, been contrary to the law's intent to protect future consumers by labeling the vehicle as a "lemon" and still have left the manufacturer without the vehicle to which it was entitled under the Lemon Law. *Id.* at 25 ¶ 11, 99 P.3d at 1028.

¶ 36 Parrot did not sell the Jeep but returned it to Pitre and Chrysler, and thus none of the concerns exist in this case that arise when a lessee sells the vehicle. Therefore, although Parrot no longer possesses the vehicle, he may still recover under the Lemon Law as a "consumer" under prongs two and three. Chrysler's motion for summary judgment should have been denied.

¶ 37 As for Parrot's motion for summary judgment, there were genuine issues of dispute between the parties whether the re-

maining requirements of the Lemon Law were met. Parrot claimed that he met the Lemon Law presumption for "defects" while Chrysler claimed that there were no "defects" as defined by the statute and that the problems had been repaired. Thus, the superior court properly denied Parrot's motion even if it did so for the wrong reason. *See City of Phoenix v. Geyler*, 144 Ariz. 323, 330, 697 P.2d 1073, 1080 (1985) (concluding that the appellate court may affirm a superior court's decision if the trial court reaches the correct result albeit for the wrong reason).[2]

¶ 38 Chrysler's request for attorneys' fees and costs is denied because it is not the prevailing party.

### CONCLUSION

¶ 39 The summary judgment for Chrysler is reversed. This matter is remanded for further proceedings consistent with this opinion.

WINTHROP, J. and FOSTER, Judge Pro Tempore *, concurring.

---

2. Parrot presented as a fourth issue whether a second judge erred in granting Chrysler's motion to reconsider an earlier order issued by another judge. The history giving rise to this issue is that, after the superior court granted Chrysler's motion for summary judgment and denied Parrot's motion to reconsider, it vacated that ruling *sua sponte* and reinstated Parrot's "Arizona Consumer Fraud Claim," citing *Schmidt v. American Leasco*, 139 Ariz. 509, 679 P.2d 532 (App.1983). Chrysler then moved for reconsideration, contending that the court should not have reinstated Parrot's "Arizona Consumer Fraud Claim" because Parrot had never made such a claim. Chrysler's motion was assigned to another superior-court judge because of a routine assignment rotation. The second judge agreed with Chrysler that the first judge had erred in finding that

Parrot had made a consumer-fraud claim. Because the first judge also had ruled that neither the Magnuson–Moss Act nor the Lemon Law applied to a leased vehicle, the second judge reasoned that a "manifest injustice" would result if the original decision were not allowed to stand. It was then he who entered the final judgment to that effect. Our disposition makes moot, however, any discussion whether the second judge erred in reconsidering an earlier order issued by another judge.

* The Honorable George H. Foster, a judge of the Superior Court of Maricopa County, was authorized to participate as a Judge *Pro Tempore* of the Court of Appeals by order of the Chief Justice of the Arizona Supreme Court. ARIZ. CONST. art. 6, § 31.