904 So.2d 450 (2005)
Ivon MESA, Appellant,
v.
BMW OF NORTH AMERICA, LLC, Appellee.
No. 3D04-1643.
District Court of Appeal of Florida, Third District.
May 4, 2005.
Rehearing Denied June 22, 2005.
*452 Krohn & Moss and Alex D. Weisberg and Theodore F. Greene III, Sunrise, for appellant.
Hinshaw & Culbertson and Bruce W. Bennett and Lori A. Heim, Tampa, for appellee.
Before CORTIÑAS and ROTHENBERG, JJ., and SCHWARTZ, Senior Judge.
CORTIÑAS, Judge.
The plaintiff, Ivon Mesa ("Mesa"), appeals from a final summary judgment in favor of the defendant, BMW of North America, LLC ("BMWNA"). We affirm, in part, and reverse, in part.
On January 29, 2001, Mesa leased a 2001 BMW 330i ("vehicle") from South Motors BMW ("South Motors"), a dealer in Miami, Florida. Prior to Mesa's lease of the vehicle, the vehicle was sold by South Motors to BMW Financial Services, which then leased the vehicle to Mesa. The lease agreement stated that "[t]he Vehicle is subject to the standard manufacturer's warranty." The lease agreement contained a disclaimer of any express or implied warranties for the vehicle. Included in the lease agreement was a provision for the assignment of title and interest in the vehicle from South Motors to the financing company, BMW Financial Services.
The vehicle was covered by the 2001 New Vehicle Limited Warranty ("warranty"), which identified BMWNA as the "Warrantor." The first sentence of the warranty stated:
BMW NA warrants 2001 U.S. specification vehicles distributed by BMW NA or sold through the BMW NA European Delivery Program against defects in materials or workmanship to the first retail purchaser, and each subsequent purchaser.
The warranty period was for 48 months or 50,000 miles, whichever occurred first. In detailing its warranty coverage during the warranty period, the warrantor (BMWNA) represented that any authorized BMW center "will, without charge for parts or labor, either repair or replace the defective part(s) using new or authorized remanufactured parts." BMWNA, as warrantor, acknowledged:
These warranties give you specific legal rights, and you may also have other rights which vary from state to state.
THE DURATION OF ANY IMPLIED WARRANTIES, INCLUDING THE IMPLIED WARRANTY OF MERCHANTABILITY, IS LIMITED TO *453 THE DURATION OF THE EXPRESS WARRANTIES HEREIN....
Beginning in February 2001, Mesa took the vehicle to South Motors reporting various defects and requesting that they be repaired. Mesa claimed that the vehicle had a defective engine, a defective body, defective electrical work, defective brakes, and other defects. According to Mesa, these defects were never repaired. Consequently, Mesa attempted to revoke acceptance of the vehicle to no avail.
On March 3, 2003, Mesa filed a complaint against BMWNA alleging counts for 1) breach of written warranty pursuant to the federal Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301-2312, 2) breach of implied warranty pursuant to the MMWA, and 3) revocation of acceptance pursuant to § 2310(d) of the MMWA. On June 2, 2004, the trial court granted BMWNA's motion for summary judgment concluding that the MMWA does not apply to this lease.
When considering a motion for summary judgment, the trial court must determine that no genuine issue of material fact exists, and the moving party is entitled to summary judgment as a matter of law. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126 (Fla.2000). A trial court's entry of summary judgment based on its interpretation of a statute is reviewed de novo. BellSouth Telecomm., Inc. v. Meeks, 863 So.2d 287 (Fla.2003); Fitzgerald v. S. Broward Hosp. Dist., 840 So.2d 460 (Fla. 4th DCA 2003).

Mesa is a "Consumer" under the MMWA
Under 15 U.S.C. § 2310(d)(1), a consumer may bring suit against a warrantor in any state for failure to comply with its obligations under a written warranty or implied warranty. Mesa alleged that BMWNA failed to comply with its written warranty. In addition, Mesa claimed that BMWNA breached its implied warranty under 15 U.S.C. §§ 2301(7) and 2308. Pursuant to 15 U.S.C. § 2310(d)(1)(A) and 15 U.S.C. § 2311(b)(1), state law governs the appropriate measure of damages for breach of warranty under the Magnuson-Moss Act. MacKenzie v. Chrysler Corp., 607 F.2d 1162, 1166 (5th Cir.1979).
We must first determine whether or not the MMWA applies to leases. Under the MMWA, a consumer may sue for damages and other equitable relief if the consumer "is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract." 15 U.S.C. § 2310(d)(1) (2001). The MMWA's definition of "consumer" is broken down into three categories:
(1) "a buyer (other than for purposes of resale) of any consumer product,"
(2) "any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product," or
(3) "any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract)."
15 U.S.C. § 2301(3) (2001). A plaintiff need only fall into one of the three categories in order to qualify as a "consumer" entitled to bring a claim under the MMWA. Voelker v. Porsche Cars N. Am., Inc., 353 F.3d 516 (7th Cir.2003); Parrot v. DaimlerChrysler Corp., 210 Ariz. 143, 108 P.3d 922 (2005); Mangold v. Nissan N. Am., Inc., 347 Ill.App.3d 1008, 284 Ill.Dec. 129, 809 N.E.2d 251 (2004).
BMWNA contends that the decision in Sellers v. Frank Griffin AMC Jeep, Inc., 526 So.2d 147 (Fla. 1st DCA 1988), is *454 controlling on the issue of whether or not the MMWA applies to leases. The trial court agreed and granted summary judgment for BMWNA based on Sellers.
In Sellers, the plaintiff leased a new Jeep Grand Cherokee from a Jeep dealer. Several days later, the motor exploded and the engine had to be repaired, after which the plaintiff experienced continuous problems with the vehicle. The plaintiff attempted to revoke acceptance of the vehicle and sued the dealer and finance company for refusing to take the vehicle back. The Sellers court found that a lessee cannot have a "written warranty" under any of the three categories of "consumer" under the MMWA because that would require a "sale" under the Uniform Commercial Code ("UCC"), and the UCC requires "the passing of title from a seller to a buyer" for a "sale." Sellers, 526 So.2d at 155.
In analyzing whether a lease transaction may be treated as a "sale," the Sellers court considered various factors under the UCC including:
(1) Whether the total amount of rental payments is sufficient to amortize the value, with interest, of the object being rented;
(2) whether the term of the lease covers the useful life of the object, so that the object has no residual value at the end of the lease;
(3) whether there is an option to purchase the object at the end of the lease for a nominal price, or an option to continue the lease on rental terms favorable to the lessee;
(4) whether the lessee is responsible for such incidents of ownership as insurance coverage, repairs, and replacement of parts;
(5) whether the lessee bears the risk of damage to or loss of the object;
(6) the nature of the lessor's business, i.e., whether the lessor normally sells rather than leases the object in question, and whether the lessor normally acts as a financing agency;
(7) whether the lessee paid a sales tax on the transaction and is required to pay all other taxes incident to the ownership of the equipment;
(8) whether the lessee is required to pay all license fees for the operation of the equipment;
(9) whether the agreement permits the lessor to accelerate the payment of rent on default by the lessee and grants remedies similar to those of a mortgagee; and
(10) whether the lessee is required to pay a substantial security deposit in order to obtain the equipment.
Sellers, 526 So.2d at 151. The court ultimately found that the lease transaction between the plaintiff and the Jeep dealer did not meet the UCC criteria for a "sale" and, thus, was not covered under the MMWA.[1]Sellers, 526 So.2d at 155-156.
In attempting to analyze whether the MMWA applies to certain automobile lease transactions, some courts have looked to *455 definitions and terms in the UCC. See e.g., Sellers, 526 So.2d 147; DiCintio v. DaimlerChrysler Corp., 97 N.Y.2d 463, 742 N.Y.S.2d 182, 768 N.E.2d 1121 (2002). However, other courts have held that it is unnecessary to look to the UCC to define the MMWA's terms because the statute is clear on its face. See Cohen v. AM Gen. Corp., 264 F.Supp.2d 616, 620 (N.D.Ill. 2003) (holding that the plain language of the Act "does not require [the court] to look at the bundle of rights acquired by the purchaser and the lessee" to determine if the lessee is a "consumer"); Mangold, 809 N.E.2d at 253 (deciding that nothing in the MMWA implies that "transfer" means that title must pass). We note that this court is not bound by any precedent on the issue of whether or not a lease transaction may be covered under the MMWA.
Contrary to the First District's analysis in Sellers, we find it is unnecessary to look at the UCC to define the MMWA's terms because the statute is clear on its face. See Mangold, 809 N.E.2d at 253-255. With regard to warranties on consumer products, the MMWA modifies the applicability and operation of the UCC and, to the extent applicable, supersedes inconsistent provisions of the UCC. Murphy v. Mallard Coach Co., 179 A.D.2d 187, 582 N.Y.S.2d 528, 531 (1992).
As noted above, the MMWA allows a "consumer" to sue a supplier, warrantor, or manufacturer who fails to comply with any obligation under the MMWA, a written warranty, an implied warranty, or a service contract. 15 U.S.C. § 2310(d) (2001). "Supplier" is defined as "any person engaged in the business of making a consumer product directly or indirectly available to consumers." 15 U.S.C. § 2301(4) (2001).
In determining whether Mesa qualifies within the MMWA's definition of a "consumer", we are persuaded by the Seventh Circuit Court of Appeal's holding in Voelker v. Porsche Cars N. Am., Inc., 353 F.3d 516 (7th Cir.2003). In Voelker, the plaintiff was involved in a car accident, and the airbags in his leased Porsche did not deploy. The plaintiff stopped making payments to the finance company, to which the lease was assigned, because the car was not repaired for several months. The plaintiff complained to the manufacturer, which promised to make payments directly to the financing company until the plaintiff's vehicle was repaired, but the financing company refused to accept such payments alleging that to do so would violate banking laws. The financing company, claiming that the vehicle parts were destroyed in the accident and were not defective, demanded that the plaintiff sell the car at an auction because his payments were overdue. In addition to various state and federal claims, the plaintiff filed a claim under the MMWA against Porsche Cars North America, Inc., the local Porsche dealer, and the finance company for breach of the written warranty and breach of implied warranty.
In Voelker, the Seventh Circuit analyzed the three definitions of "consumer" under the MMWA to determine whether lessees are protected by the Act. Voelker, 353 F.3d at 522. The court concluded that a lessee does not qualify under category one because a category one "consumer" must "be a `buyer,' which presupposes a sale" and therefore requires the transfer of title. Voelker, 353 F.3d at 523. The court further concluded that the plaintiff did not qualify as a category two "consumer" since the transfer to Voelker preceded the warranty's effective date, and, accordingly, he could not maintain that the car was "transferred [to him] during the duration of" the warranty. Voelker, 353 F.3d at 524.
Although the MMWA does not define "transferred," we agree with the *456 courts that have held that the word "transfer" refers to "the physical transfer of a consumer product and not the legal transfer of its title." Parrot, 108 P.3d at 925; see Mangold, 809 N.E.2d at 253; Dekelaita v. Nissan Motor Corp. in USA, 343 Ill.App.3d 801, 278 Ill.Dec. 649, 799 N.E.2d 367, 371 (2003), appeal denied, 207 Ill.2d 599, 283 Ill.Dec. 133, 807 N.E.2d 974 (2004). As such, we find it unnecessary to look to the UCC to define "transferred." Parrot, 108 P.3d at 925; Mangold, 809 N.E.2d at 253.
In Voelker, the court held that the plaintiff met the definition of a category three consumer because, under the laws of Illinois, a lessee who is an assignee of the warranty is entitled to enforce the obligations of the warranty against the warrantor. Voelker, 353 F.3d at 524.
Applying the MMWA to the facts of this case, we find that Mesa qualifies as a category two and category three "consumer." See Parrot, 108 P.3d at 926-927.
Unlike the plaintiff in Voelker, supra, Mesa alleged that the car was transferred to her during the duration of the warranty, and there is evidence to support this allegation. See 15 U.S.C. § 2301(3) (2001); Peterson v. Volkswagen of Am., Inc., 272 Wis.2d 676, 679 N.W.2d 840, 844 (concluding that such allegation is sufficient to allege a cause of action as a category two consumer), review granted, 273 Wis.2d 654, 684 N.W.2d 136 (2004); Szubski v. Mercedes-Benz, U.S.A., L.L.C., 124 Ohio Misc.2d 82, 796 N.E.2d 81, 85 (2003) (holding that a lessee qualified as a transferee where the plaintiffs "alleged that they leased the automobile during the time period in which a written four-year or fifty-thousand mile `bumper to bumper' warranty issued by the manufacturer was in effect"); see also BLACK'S LAW DICTIONARY 1504 (7th ed. 1999) (defining "transfer" as "to change over the possession or control of").
Mesa also qualifies as a category three "consumer" since Mesa was entitled to enforce the manufacturer's written warranty, as evidenced by the service and repair records of the vehicle. Thus, the MMWA extends to Mesa's lease transaction. See Weisberg v. Jaguar Cars, Inc., 2004 U.S.App. LEXIS 5738 (7th Cir.2004); Voelker, 353 F.3d 516; Cohen, 264 F.Supp.2d 616; Ryan v. Am. Honda Motor Corp., 376 N.J.Super. 185, 869 A.2d 945 (2005); Parrot, 210 Ariz. 143, 108 P.3d 922; Peterson, 272 Wis.2d 676, 679 N.W.2d 840; Mangold, 347 Ill.App.3d 1008, 284 Ill.Dec. 129, 809 N.E.2d 251; Dekelaita, 343 Ill. App.3d 801, 278 Ill.Dec. 649, 799 N.E.2d 367; Szubski, 124 Ohio Misc.2d 82, 796 N.E.2d 81.
Having found that the MMWA applies to the instant lease, we turn to Mesa's claims for 1) breach of the written warranty, 2) breach of implied warranty, and 3) revocation of acceptance.

Mesa may sue BMWNA for Breach of Express Warranty under the MMWA
First, Mesa claims that BMWNA breached a "written warranty" under the MMWA. BMWNA contends that Mesa may not proceed under the MMWA because its 2001 New Vehicle Limited Warranty does not fall within the MMWA's definition of "written warranty." Under the MMWA, a "written warranty" is defined broadly as:
(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or

*457 (B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace or take any other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.
15 U.S.C. § 2301(6) (2001). Contrary to BMWNA's position, we find that this definition does not exclude dealers, such as the one in this case, who purchased the vehicle from BMWNA for purposes of leasing it to an ultimate user. See Cohen, 264 F.Supp.2d at 619 (holding that the purpose of the transaction was not for the purposes of resale, but for the purpose of leasing); Ryan, 869 A.2d at 949 n. 5.
BMWNA next contends that its warranty does not fall within the MMWA's "written warranty" definition because the Act requires that the written warranty from a supplier to a buyer be made "in connection with the sale" of a consumer product. However, the MMWA does not require a sale to be made to the ultimate consumer with a passage of title to that party. Cohen, 264 F.Supp.2d at 620. In this case, prior to Mesa's lease of the vehicle, the vehicle was sold by South Motors to BMW Financial Services, thus satisfying the "in connection with the sale" prong of the "written warranty" definition. We note that the clear terms of the warranty extended coverage "to the first retail purchaser, and each subsequent purchaser," which included Mesa, and the lease agreement provided that the vehicle was covered under the manufacturer's warranty. Thus, we hold that a vehicle involved in a prior sale that is subsequently leased with a manufacturer's warranty satisfies the MMWA's requirement that the warranty be made "in connection with the sale," and a lessee who is assigned such a warranty may enforce it. See Cohen, 264 F.Supp.2d at 619; Peterson, 679 N.W.2d at 846 (holding that a lessee is protected under the MMWA "where the sale of a vehicle is merely to facilitate a lease, the issuance of the warranty accompanies this sale, and the lessor explicitly transfers its rights in the warranty to the lessee"); Mangold, 809 N.E.2d at 254.
Moreover, for Mesa to state a valid claim under the MMWA for breach of express warranty, BMWNA's warranty did not need to meet the definition of "written warranty" under 15 U.S.C. § 2301(6) (2001). Voelker, 353 F.3d at 525. Because Mesa is a category three "consumer" entitled "under applicable State law" to enforce BMWNA's 2001 New Vehicle Limited Warranty, she is a consumer allowed under the MMWA to enforce BMWNA's warranty. See Voelker, 353 F.3d at 525; see 15 U.S.C. § 2301(3) (2001) (including as consumers those entitled to enforce a warranty "under applicable State law"); Dekelaita, 343 Ill.App.3d 801, 278 Ill.Dec. 649, 799 N.E.2d 367 (holding that the third category of "consumer" under the MMWA does not exclusively require that the warranty meet the MMWA's definition if, in fact, it is enforceable under State law).
In this case, the clear terms of the warranty extended coverage "to the first retail purchaser, and each subsequent purchaser," including Mesa. Moreover, the lessor assigned its rights to the manufacturer's warranty to Mesa, as evidenced by the language in the leasing agreement stating that, "[t]he Vehicle is subject to the standard manufacturer's express warranty." Accordingly, under Florida law, Mesa was entitled to enforce the rights arising from the manufacturer's express warranty. See Nationwide Mut. Fire Ins. Co. v. Central *458 Fla. Physiatrists, 851 So.2d 762, 766 (Fla. 5th DCA 2003); see also Collins Co. v. Carboline Co., 125 Ill.2d 498, 127 Ill.Dec. 5, 532 N.E.2d 834, 839 (1988).
If Mesa could not enforce the warranty against BMWNA, South Motors, or BMW Financial Services, the manufacturer's promises and the vehicle's warranty would be meaningless. This position is contrary to the plain language of the MMWA and its legislative intent to protect consumers. See Cohen, 264 F.Supp.2d at 621; Parrot, 108 P.3d at 927.
Therefore, we reverse the trial court's granting of summary judgment in favor of BMWNA on Mesa's claim for breach of express warranty.

Absent Privity, Mesa cannot sue for Breach of Implied Warranty
Next, Mesa claims that BMWNA breached an implied warranty of merchantability. Mesa claims that the MMWA does not require privity between a manufacturer and a lessee. While Mesa is correct that the MMWA does not require privity or discuss a state's ability to establish a privity requirement, the question of whether or not privity is a prerequisite to a claim for breach of implied warranty under the MMWA hinges entirely on the applicable state law. Voelker, 353 F.3d at 525; 15 U.S.C. § 2301(7) (2001). The MMWA does not supplant state law privity requirements for implied warranty claims. Abraham v. Volkswagen of Am., Inc., 795 F.2d 238, 249 n. 12 (2d Cir.1986) (concluding that the MMWA does not supplant state law privity requirement); see also Hahn v. Jennings, 2004 WL 2008474 (Ohio Ct.App.2004). Under Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity. Kramer v. Piper Aircraft Corp., 520 So.2d 37 (Fla.1988); Weiss v. Johansen, 898 So.2d 1009 (Fla. 4th DCA 2005); Spolski Gen. Contractor v. Jett-Aire Corp. Aviation Mgmt. of Cent. Fla., Inc., 637 So.2d 968 (Fla. 5th DCA 1994).
Alternatively, Mesa contends that, even if the MMWA requires privity between a manufacturer and a lessee to bring a breach of implied warranty claim, BMWNA created privity through its issuance of an express written manufacturer's warranty. We disagree.
BMWNA did issue an express written manufacturer's warranty. However, it issued the warranty to the buyer, South Motors. Thus, Mesa cannot maintain a suit against BMWNA for breach of implied warranty as there was no privity of contract between Mesa and BMWNA. See Spolski, 637 So.2d 968 (holding that a manufacturer could not be held liable on warranty claims because there was no privity between the manufacturer and the contractor).
Based on our holding, Mesa could have properly alleged a claim for breach of implied warranty under the MMWA against the lessor with whom she contracted. Moreover, the lessor's disclaimer in the lease agreement would not have shielded it from a claim for breach of implied warranty. See Voelker, 353 F.3d at 526. Under the MMWA, a supplier may not disclaim an implied warranty on a consumer product if "such supplier makes any written warranty to the consumer." 15 U.S.C. § 2308(a) (2001). However, in this case, Mesa failed to properly allege a claim for breach of implied warranty against the lessor.
Therefore, the trial court properly granted summary judgment in favor of BMWNA on Mesa's claim for breach of implied warranty.

Absent Privity, Mesa cannot sue for Revocation of Acceptance
Lastly, Mesa seeks to revoke acceptance of the vehicle under the MMWA. *459 Although revocation of acceptance can be a remedy for breach of express warranty under the MMWA[2], we have found no case applying Florida warranty law allowing a plaintiff to seek such a remedy against a manufacturer with whom the plaintiff is not in privity of contract. On appeal, Mesa has not cited to any such case. Other jurisdictions have found that a cause of action for revocation of acceptance requires privity. See e.g., Gilbert v. Monaco Coach Corp., 352 F.Supp.2d 1323, 1335 (N.D.Ga.2004).
As discussed in our implied warranty analysis, Mesa could have properly sought revocation under the MMWA against the lessor with whom she contracted. However, since there was no privity between Mesa and BMWNA, the trial court properly granted summary judgment in favor of BMWNA on the revocation count.

Conclusion
Insofar as the Sellers court found that the MMWA does not extend to leases, we certify direct conflict with the First District Court of Appeal in Sellers v. Frank Griffin AMC Jeep, Inc., 526 So.2d 147 (Fla. 1st DCA 1988).
Accordingly, we affirm the trial court's entry of summary judgment on the plaintiff's claims for breach of implied warranty and revocation of acceptance under the MMWA, and reverse the entry of summary judgment on plaintiff's claim for breach of express warranty under the MMWA.
Affirmed, in part; reversed, in part, and remanded; direct conflict certified.
NOTES
[1] We note that, in Sellers, the plaintiff's lease agreement did not include a purchase option at the end of the lease term. Sellers, 526 So.2d at 154. Under the section titled "Lease Only  No Option to Purchase," the lease agreement provided:

I agree that this agreement is one of lease and not of sale. There is no option for me to purchase the vehicle.
Sellers, 526 So.2d at 154. In contrast, Mesa's lease agreement provided a purchase option as follows:
Purchase Option at End of Lease Term. You have an option to purchase the Vehicle at the end of the Lease Term for the Residual Value plus any official fees or taxes or other charges imposed in connection with this Lease and, or purchase.
[2] Under 15 U.S.C. § 2310(d)(1) (2001), a plaintiff "may bring suit for damages and other legal and equitable relief."